W. S. ALLEN ET AL. v. TOWN OF REIDSVILLE ET AL.

(Filed 26 November, 1919.)

1. **Municipal Corporations—Cities and Towns—Elections—Injunctions—Appeal and Error.**

    Where an election has been held according to law to vote upon the question of the city selling one of its public utilities, a restraining order theretofore sought to prevent the holding of the election, presents a moot question that the Supreme Court will not decide on appeal, there being then nothing for the judgment to operate on.

2. **Elections—Fraud—Municipal Corporations—Cities and Towns—Sales—Public Utilities—Injunctions—Contracts.**

    Where the municipal authorities had agreed to sell one of the public utilities of the city, subject to the approval of the vote of its electors, and thereupon a suit to restrain the election is instituted, alleging fraud in the contract, and thereafter the question is approved by the voters: *Held*, the allegations of fraud cannot be maintained, for at that time the proposed contract had not been entered into, and the making of the contract thereafter upon the approval of the voters cannot affect the matter, as it would make the action a new one.

3. **Appeal and Error—Exceptions Abandoned—Briefs.**

    An exception not referred in the brief is considered as abandoned on appeal. Rule 34.

4. **Appeal and Error—Injunctions—Fraud—Findings.**

    Where matters of fraud alleged as the basis of an application for an injunction are denied by the answer, and there is a finding by the judge, acquiesced in by the plaintiff, that there was no fraud, this question will not be considered on appeal.

5. **Municipal Corporations—Cities and Towns—Public Utilities—Sales—Admissions—Trials—Consideration—Fraud.**

    33—178

In an action wherein an injunction is sought against the private sale of a public utility by the city authorities, on the ground that the purchaser was to pay only thirty thousand dollars for it when another offered fifty thousand dollars, the sale will not be declared void for an admitted insufficient consideration, when other allegations of the defendants set forth such facts as would show that the citizens or the business interests of the city would be equally or more benefited if sold to the one with whom they had agreed.

6. **Elections—Ballots—Related Questions—Municipal Corporations—Cities and Towns—Public Utilities—Sales—Franchise.**

The question of a sale of a public utility to a certain corporation, and the granting to it of a franchise necessary to its continued operation, if submitted upon one ballot, are questions closely related to each other, and the ballot would not be objectionable on the ground that a vote thereon would deprive the voter of his choice as to one of the propositions. In this action it is admitted that only the one proposition as to the sale was submitted.

7. **Statutes—Interpretation—Legislative Purpose.**

Statutes relating to the same subject-matter should be construed in connection with each other as together constituting one law, giving effect to all parts of the statute when possible; and the history of the Legislature may be considered in the effort to ascertain the uniform and consistent purpose of the Legislature.

8. **Same—Municipal Corporations—Cities and Towns—Public Utilities—Public Outcry—Private Sales—Vote of People.**

Before the enactment of our statute, now Rev., 2916 (6), our courts had interpreted our statute, now Rev., 2978, requiring a sale at public outcry by municipal authorities, as not including public utilities such as parks, markets, city halls, waterworks, lighting plants, etc., held for the use of the public, and said sec. 2916 (6) was thereafter enacted, requiring that such public utilities, excluded by sec. 2978, should be submitted to the voters of the municipality, and it is *Held*, that these two statutes are harmonious and reconcilable, and that under the provisions of sec. 2916 (6) it is not required that a sale of public utilities, held in trust for the citizens, and approved by the voters, be made at public outcry to the highest bidder, but may be sold privately, which, in this case, is particularly emphasized by the charter of the city in question.

9. **Monopoly—Evidence—Injunction.**

In this cause to restrain a private sale of a public utilities by the city authorities to an electrical power plant with a grant of a municipal franchise, there is no evidence that the purchaser would acquire a monopoly.

CLARK, C. J., dissenting.

APPEAL by plaintiffs from *Bryson, J.,* at the June Term, 1919, of ROCKINGHAM.

This is an action brought by two citizens and taxpayers of the town of Reidsville against the town of Reidsville, and the mayor and members of the board of commissioners of said town, and the Southern Public

Utilities Company to restrain the holding of an election called for the purpose of approving or disapproving the sale of the electric light plant of Reidsville to the utilities company.

The plaintiffs allege, in substance, the ownership of the electric light plant by the town of Reidsville; that the utilities company is a subsidiary corporation of the Southern Power Company, and that these two companies and the American Tobacco Company have stockholders in common; that the defendants, may and board of commissioners, were elected in May, 1917, and that the American Tobacco Company, through its agents and employees, was active in securing their election; that the said mayor and commissioners were nominated at the dictation and instance of the American Tobacco Company, and were elected in large measure by its influence, exerted through its officers, agents, and employees, about one hundred and fifty-five of whom were voters in said election; that prior to the election the said defendants, together with the said utilities company, began to conspire and collude together for the purpose of effecting a transfer of said light company and property to the utilities company at a gross and fraudulent undervaluation; that the defendants refused to furnish prospective bidders for the said property any definite or adequate information as to what property they proposed to sell, and what obligation, if any, they desired the purchasers to assume, and that they evaded advertising competitive bids in any adequate manner; that at a meeting of the defendant board of commissioners on 14 August, 1917, Frank Talbert and his associates, all reputable parties, submitted a written proposal for the purchase of said property at a price of $50,000; that notwithstanding the fact that the bid of Talbert and his associates was for $20,000 more than the offer of the utilities company, the defendants accepted the proposition of the utilities company to buy said plant for $30,000; that the terms on which Talbert and his associates agreed to buy said property, and the obligations they agreed to assume, were more favorable to the town of Reidsville and its citizens than those contained in the offer of the utilities company; that the action of the defendants was without any valid reason or excuse, and was arbitrary, unjust, and due to partiality to the untilities company and its allied corporations, and in disregard of the rights of the plaintiffs and other citizens and taxpayers; that on 11 September, 1917, the defendants ordered an election to be held on 23 October, 1917, for the purpose of enabling the citizens of Reidsville to vote upon and approve or reject the said proposition of the utilities company; that the service rendered by the utilities company to the public for several years had been unreliable and unsatisfactory; that the said contract with the utilities company, under the circumstances and conditions alleged, is a fraud upon the town of Reidsville and its citizens, as well as upon the rights of the plaintiffs;

that said contract attempted to be made is fraudulent and void, and if submitted by said mayor and board of commissioners to the voters at an election, will subject the town to needless and unnecessary expense; that if the defendants are allowed to proceed and consummate their scheme of selling the said property and granting a franchise to the utilities company, the plaintiffs will be irreparably damaged, and they demand judgment that a restraining order be issued to prevent the holding of said election, and that the action of the defendants in attempting to sell said property be decreed to be fraudulent and void, and that the same be set aside, and for a permanent injunction.

A temporary restraining order was issued upon motion of the plaintiffs, returnable before *Judge Harding* on 20 October, 1917.

The defendants filed answers in which all of the allegations of fraud, collusion, and improper conduct were specifically denied.

The defendants further allege that the town of Reidsville is largely a manufacturing community, particularly interested in the manufacture of the products of leaf tobacco, its prosperity and growth being dependent to a large extent upon such enterprises, its payroll of 1 January, 1917, being about $8,000 per week; that for the successful operation and enlargement of the different manufacturing enterprises, it was necessary to have a much larger quantity of electric power than was obtainable from the plant owned by the town of Reidsville; that in order to meet this demand and need for increased power, the Reidsville Commercial and Agricultural Association was formed; that this was a voluntary association of practically all of the business men of the community, which is now supported by the public revenue by authority of the General Assembly; that this association took up the question of the necessity of increasing the supply of electric power; that shortly before this, the Southern Power Company had built a transmission line to Spray and Draper which passed near Reidsville, making available for the first time to the town of Reidsville the only source of hydro-electric power in this section of the State; that in considering the power question, the said association appointed committees to look into the matter to make available to the town the hydro-electric power of the Southern Power Company; that on 3 August, 1915, at a meeting of the directors of said association, together with representative citizens of the town, the manner and means of increasing the electric power was considered; that about a year thereafter the F. R. Penn branch of the American Tobacco Company, which had been engaged in the manufacture of tobacco in Reidsville for a number of years, expressed a desire to make a large addition to its existing plant, provided the necessary hydro-electric power could be obtained, which increased demand for power was equal to or in excess of the capacity of the electric power which the plant of the town of

Reidsville was able to furnish, and that this addition to the plant of the Penn Company would increase the payroll of the town of Reidsville $10,000 per week; that the plant of the town of Reidsville has the capacity of some two hundred and twenty-five horse-power, which was totally inadequate for the needs of the town, its citizens, and various enterprises; that under these conditions there was a division of opinion as to whether it was best to sell the plant or to purchase the necessary power from the Southern Power Company; that upon investigation it developed that in order to buy the power of the Southern Power Company for sale and distribution it would be necessary for the town to install and equip a transformer at a cost of approximately $30,000; that these matters continued to be the subject of discussion and agitation, not only among the members of the board of commissioners, but upon the streets of the town and the local newspapers, until finally it became the controlling and decisive issue in the election of May, 1917, at which the present board of commissioners and mayor were elected, the issue being whether the town should retain its plant, build the transformer station, and secure the power of the Southern Power Company for sale and distribution, or whether it should sell its plant and grant a franchise to the Southern Public Utilities Company and let that company supply the needed power, and upon this issue the present board of commissioners and mayor were elected by a majority of one hundred and sixty-nine votes; that the R. P. Richardson, Jr., Company is engaged in the manufacture of tobacco in the town of Reidsville, and that they will have serious competition in the purchase of its leaf supply as well as in the employment of labor in the event the manufacturing enterprises of the town are substantially increased, especially will the addition of the Penn factory tend to produce this effect, and as the defendants are advised and believe, the president of the company, and one of its largest stockholders, R. P. Richardson, has a selfish interest in retaining the existing conditions of labor and tobacco; that the said Richardson has been the chief actor in opposing the plan proposed by the said board of commissioners and in submitting the proposition of the said Talbert and his associates, which these defendants allege was not made in good faith.

That in passing upon the merits of the two propositions, and in declining the proposition of the plaintiffs and accepting the proposition of the Southern Public Utilities Company, they were influenced, in addition to the matters and things hereinbefore set out by the following reasons:

1. That they are advised and believed, and still believe, that the proposition accepted was better for the town of Reidsville and its various industries, and especially so for that it would insure a more continuous, reliable, and ample supply of power at a cheaper rate.

2. That the proposition of the plaintiffs was signed by a number of individuals and one corporation. Only one of said individuals so signing being a resident of the State of North Carolina, and he was known to the defendants to possess limited means. That the local corporation signing same was a tobacco company, chartered in the State of New Jersey, and as defendants were advised and believe, said corporation had no charter power to engage in the business of furnishing light and power as proposed, and the proposition itself expressly stated that if accepted, they would organize themselves into a corporation without indicating the amount of proposed capital stock or financial responsibility of the contemplated corporation.

3. That these defendants did not then, and do not now, believe that the proposition to the plaintiffs was submitted in good faith with a view to have same approved by the people at an election, if accepted, and they were confirmed in this belief by the statement of R. P. Richardson, chief actor and moving spirit in same, made at the time of submitting the proposition, that if they accepted his proposition he would oppose the approval thereof by the people at an election to be held for that purpose.

4. That the bidders stated, in submitting their proposition, that if the same was accepted and approved at an election that it would require twelve months thereafter to install the necessary machinery and appliances, and owing to existing war conditions, these defendants did not believe that they would be able to purchase and install the machinery even in that time. Whereas, the Southern Public Utilities Company stipulated and agreed, if awarded the contract, to install and begin furnishing power within ninety days.

5. That the bidders' proposition contemplated installing a large steam plant, the operation of which would be dependent solely upon the use of coal, and no auxiliary plant to supply light and power in case of accident, break-down, or interference of the main plant; whereas, the Southern Public Utilities Company stipulated to furnish hydro-electric power, and also to maintain an auxiliary steam plant; that the element of uncertainty in obtaining continuous power and light generated solely from coal was emphasized by the fact that these defendants have not been able to secure coal from the mines sufficient, at all times, to operate this present small plant, occasioned by the interruption of railroad facilities in handling coal since this country entered the war.

6. That the controlling issue in the campaign at which these defendants were elected was as to whether or not the town of Reidsville should sell its plant to the Southern Public Utilities Company and contract with them for hydro-electric power; that the merits of this proposition were discussed in public meetings among the people before the election, and some of the plaintiffs made public speeches advising the people against

the election of the present board of commissioners to prevent said sale and contract. That the voters overwhelmingly elected the present board upon that issue, and with this mandate fresh from the electorate, these defendants, as the chosen servants of the people, took up and negotiated in good faith with the Southern Public Utilities Company the contract and sale referred to. That after careful, honest, and faithful consideration of the matter, they sold said plant and property to, and made a contract with, the Southern Public Utilities Company, subject to the approval thereof by the people in accordance with subsection 6 of section 2916 of the Revisal, as amended by the acts of 1917.

7. That these defendants were and are in no wise interested in the personal animosity existing in the mind of the president of the R. P. Richardson, Jr., & Company, Inc., against the American Tobacco Company, arising out of the fact that they are and have been in the past business rivals, but were desirous of encouraging the development of all manufacturies, and furnishing of all necessary power for their operation, and the consequent increased demand for a larger number of employees at good wages.

The Public Utilities Company filed a separate answer, which is substantially as hereinbefore set forth, except that in addition thereto it stated that it did not desire to go into a community where there was a division of sentiment, and offered to cancel and rescind the said proposition to sell said plant to it, and it renewed this offer in this court.

Affidavits were filed in behalf of the plaintiffs and the defendants, and at the hearing before *Judge Harding* on 20 October, 1917, the restraining order theretofore issued was dissolved, and among other things he finds in said order that "the court is of the opinion, and so finds, the facts that there is no evidence of any corruption or fraud on the part of the defendants in entering into the contract set out in the pleading or in calling and ordering an election for the ratification of the contract by the said voting citizens of the town of Reidsville."

The plaintiffs excepted to this order, and gave notice of an appeal to the Supreme Court, but the appeal was abandoned.

The election was held on 23 October, 1917, and resulted in an approval by the voters of the sale to the utilities company, there being three hundred and ninety-two votes cast in favor of said sale and sixty-eight votes against it.

The cause again came on for hearing at June Term, 1919, and the plaintiffs then made the following admissions:

"It is admitted by the plaintiffs that an election was duly called, at which election there was submitted to the voters of the town of Reidsville the question as to whether or not the said town, through its commissioners, should make sale of the electric plant, appliances, and fix-

tures of said town to the Southern Public Utilities Company for the sum of $30,000, as provided and set forth in a certain ordinance adopted 11 September, 1917; and the said election so held was confined to this question alone; that as a result thereof 392 votes were cast in favor of said sale, and 68 votes as against the sale; that the machinery provided for the holding of said election, and the holding thereof, was such as provided by law, and that, in pursuance of said ratification of such contract by the voters, as indicated above, the commissioners of the town of Reidsville executed said contract set forth in said ordinance, and in pursuance thereof made a deed, as provided therein, to the said Southern Public Utilities Company."

The plaintiffs moved for judgment upon the record chiefly upon the ground that the contract of sale to the utilities company was void because it was not made at public auction, and because two propositions, one to sell the plant and the other to grant a franchise, were submitted upon one ballot.

The defendants moved for judgment upon the pleadings upon the following grounds:

1. That the only relief prayed in the original complaint, and the only relief to which the plaintiffs might in any event have been entitled, was an injunction preventing the holding of an election and the consummation of the sale of the plant upon the terms and conditions set forth in the pleadings, and it appears that since the institution of the restraining order herein the election has been held and the sale consummated.

2. The replication departs from the cause of action alleged in the original complaint, and introduces a new and distinct cause of action, based upon the facts which arose subsequent to the institution of this action.

The defendants also moved for judgment upon the ground that upon the admissions of the plaintiff the contract of sale was valid and binding between the parties.

Upon an intimation of his Honor that he would grant the motion to dismiss the action, the plaintiffs offered to introduce evidence in support of the allegations of the complaint.

His Honor refused to hear the evidence, and the plaintiffs excepted.

Judgment was then entered dismissing the action, and the plaintiffs excepted and appealed.

*W. P. Bynum, R. C. Strudwick, W. R. Dalton, J. R. Joyce, and King & Kimball for plaintiff.*

*P. W. Glidewell, W. M. Hendren, A. L. Brooks, and J. M. Sharpe for defendant town.*

*Osborne, Cocke & Robinson for defendant utilities company.*

ALLEN, J., after stating the case:  This action cannot longer be maintained for the purpose for which it was instituted—to restrain the holding of the election on 23 October, 1917—because the election has already been held.  In *Sasser v. Harriss,* at this term, which was brought to restrain the holding of a primary election, *Brown, J.,* says:  "It appears that the primary election has long since been held, and doubtless the candidates now have been duly elected.  Nothing can now be accomplished by setting aside the order of *Judge Calvert.*  If his judgment was reversed, this Court could not now order another primary.  The question has thus become merely a moot question, and there is nothing for the judgment of the Court to operate upon."

Nor can the plaintiff assail the contract between the town of Reidsville and the utilities company on the ground of fraud, or otherwise, in this action, because there was no contract until it was approved by the voters, which was long after the commencement of the action, and "certainly the principal cause of action must exist in all cases at the time the action began.  It would be unjust and absurd to bring a party into court to answer the plaintiff before he had a right to sue.  The mere fact that the cause of action is introduced into a pending action cannot alter the case, because this, in effect, makes the action a new one."  *Clendenin v. Turner,* 96 N. C., 421.

"While courts are liberal in permitting amendments, such as are germane to a cause of action, it has been frequently held that the Court has no power to convert a pending action that cannot be maintained into a new and different action by the process of amendment.  *Best v. Kinston,* 106 N. C., 205; *Merrill v. Merrill,* 92 N. C., 657; *Clendenin v. Turner,* 96 N. C., 416."  *Bennett v. R. R.,* 159 N. C., 345."

The judgment of the Superior Court dismissing the action must therefore be affirmed in any event, but as other questions of public interest, which ought to be settled, have been discussed, we will consider them, first eliminating extraneous matters alleged in the pleadings, which have no bearing on the legal questions presented by the appeal.

Prominent among these are the allegations of collusion between the mayor and commissioners and the utilities company to defraud the citizens of Reidsville; that the utilities company is subsidiary to the Southern Power Company; that the utilities company, the Southern Power Company, and the American Tobacco Company have stockholders in common; that the American Tobacco Company nominated and elected the defendants, and other allegations of improper influences brought to bear on the defendants, dishonest motives on their part, and fraud.

These cannot be considered because they are denied by the defendants, and the plaintiffs have not only acquiesced in the finding of *Judge Harding* "that there is not evidence of any corruption or fraud on the part of

the defendants in entering into the contract set out in the pleadings, or in calling and ordering an election for the ratification of the contract by the said voting citizens of the town of Reidsville," but they have also abandoned the exception taken on the trial to the refusal to permit them to introduce evidence to support the allegations of the complaint, which can only be accounted for on the theory that they could not prove what they alleged, or, if proven, the facts would·not, in their opinion, affect a contract made by the people themselves.

The exception is abandoned because not referred to in the brief. Rule 34.

Recognizing this condition of the record, the plaintiffs rely in their brief on their motion for judgment on the admissions of record, and in the pleadings, which is upon three grounds.

(1) That the purchase price of $30,000, when an offer of $50,000 had been made, is so grossly inadequate as to amount to fraud.

(2) That the election is void because two unrelated propositions were submitted to the voters on one ballot, the sale of the electric light plant and the granting a franchise to the utilities company.

(3) That the sale is void because not made at public auction.

There might be room for debate as to the first position of the plaintiffs if the only consideration for the contract was the amount of money to be paid in cash, but this is not so. On the contrary, the defendants considered the advantages to the community of securing hydro-electric power offered by the utilities company, instead of steam power offered by Talbott and his associates, the ability of the respective parties to perform their contracts, the fact that the utilities company could install additions to the plant within ninety days sufficient to furnish a much needed increase of power, while Talbott and his associates had to organize a corporation to perform their contract, and could not make the necessary additions in less than twelve months; that the expense of pumping would be less under the utilities contract, and concluded that the contract offered by the utilities company was most advantageous to the citizens and taxpayers of Reidsville.

There is, therefore, no admission that the consideration for the contract is inadequate, and as we are now dealing with a motion for judgment on the admissions of the parties, this contention of the plaintiffs cannot be sustained.

The principle that unrelated propositions ought not to be submitted to a vote on one ballot, is fully recognized, and it is of the first importance that this principle should be strictly observed as the will of the voter ought not to be coerced, and he ought not to be in the situation where he must vote for a proposition to. which he is opposed in order that he may support one he favors (see *Winston v. Bank,* 158 N. C., 512;

*Keith v. Lockhart,* 171 N. C., 457; *Hill v. Lenoir,* 176 N. C., 572), but it would seem that the sale of an electric light plant and the grant of a franchise to the purchaser under which it could be operated are parts of one whole, and as closely related as any two questions could be (see *Briggs v. Raleigh,* 166 N. C., 149), and, if not, the plaintiffs have admitted "that an election was duly called, at which election there was submitted to the voters of the town of Reidsville the question as to whether or not the said town, through its commissioners, should make sale of the electric plant appliances and fixtures of said town to the Southern Public Utilities Company for the sum of $30,000, as provided and set forth in a certain ordinance adopted 11 September, 1917, and the said election so held was confined to this question alone," thus showing that one and not two propositions were submitted to the voters.

The remaining question involves the power of the town of Reidsville to sell its light plant at private sale, subject to the approval of the voters, instead of at public auction, and this requires an examination and construction of the following statutes:

Rev., 2978: "By mayor and commissioners at public sale. The mayor and commissioners of any town shall have power at all times to sell at public outcry, after thirty days notice, to the highest bidder, any property, real or personal, belonging to any such town, and apply the proceeds as they may think best."

Rev., 2916 (6): "To grant, upon reasonable terms, franchises for public utilities, such grants not to exceed the period of sixty years, unless renewed at the end of the period granted; also to sell or lease any water-works, lighting plants, gas or electric, or any other public utility which may be owned by any city or town: *Provided,* in the event of such sale or lease it shall be approved by a majority of the qualified voters of such city or town, and also to make contracts, for a period not exceeding thirty years, for the supply of light, water, or other public commodity: *Provided,* this subsection shall not apply to New Hanover and Cumberland counties."

Ch. 28, Private Laws 1917, sec. 1: "That the following provisions of subsection six of section two thousand nine hundred and sixteen of the Revisal of one thousand nine hundred and five shall not apply to the town of Reidsville, in Rockingham County, namely: '*Provided,* in the event of such sale or lease it shall be approved by a majority of the qualified voters of such city or town.'

"Sec. 2. That said town of Reidsville may sell or lease any of its public utilities, such as lighting plants or system mentioned in said subsection: *Provided,* in the event such sale or lease, which shall be approved by a majority of the votes cast in any election at which said proposition may be submitted; said election to be held under the same general rules,

laws, and regulations of elections for town officers in the town of Reidsville."

These statutes, relating as they do to the same subject, should be read in connection with each other, as together constituting one law, giving effect to all parts of the statutes if possible, and the history of the legislation may be considered in the effort to ascertain the uniform and consistent purpose of the Legislature. 39 Cyc., 1150.

"All statutes are presumed to be enacted by the Legislature with full knowledge of the existing condition of the law, and with reference to it. They are, therefore, to be construed as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the Constitution, but also in connection with other statutes, on the same subject, and, under certain circumstances, with statutes on cognate and even different subjects. This rule of construction, however, so far as prior statutes are concerned, is to be restricted to cases where the statute in question is really doubtful; if the statute is clear on its face, prior statutes may not be consulted to create an ambiguity." 36 Cyc., p. 1146.

Section 2978 of the Revisal, formerly section 3824 of the Code of 1883, requiring a sale at public outcry, was first enacted (ch. 112, Laws 1872-3), and it received authoritative construction in *Southport v. Stanley,* 125 N. C., 464, as follows:

"The reasonable construction of the statute must be that the town or city authorities can sell any personal property, or sell or lease any real estate which belongs to the town or city as the surplus of the original acreage ceded for the town or city site, or such land as may have been subsequently acquired or purchased; but in no case can the power be extended to the sale or lease of any real estate, which, by the terms of the act of incorporation, is to be held in trust for the *use* of the town, or any real estate with or without the buildings on it, which is devoted to the purposes of government, including town or city hall, market houses, houses used for fire departments or for water supply, or for public squares or parks. To enable the town or city authorities to sell such of the real estate of the town or cities as is mentioned just above, there must be a special act of the General Assembly authorizing such lease or sale."

The effect of this decision is that property of the city or town, such as parks, markets, city halls, waterworks, lighting plants, etc., held for the use of the public, are not within the provisions of Rev., 2978, and cannot be sold thereunder, and that, if sold at all, additional authority must be conferred by the General Assembly.

If there was any doubt of this being the correct view of the *Southport case,* it is put at rest by the unanimous opinion of the Court in *Church*

*v. Dula,* 148 N. C., 266, in which *Hoke, J.,* speaking for the Court, says: "This view is not affected in any way by the case of *Southport v. Stanley,* 125 N. C., 464, to which we were referred by plaintiff's counsel. That decision was to the effect that the general power conferred on the authorities of a town to sell and dispose of town property by section 3824 of the Code of 1883 (Rev., 2978) does not give the right to sell property held in trust for the public; for any such purpose there must be an act of the Legislature conferring special power."

Under this construction of the statute it became necessary to provide means for selling and leasing property, held for the use of the public, as frequently a sale or lease would be advantageous and would promote the public welfare, and to provide this remedy, section 2916, subsection 6, was enacted, which deals with the property, which the Court said was not embraced in section 2978, and thus understood, the two sections mean that under section 2978 the mayor and commissioners shall have power to sell at auction any property except that held for a public use, and under section 2916, subsection 6, that they may sell property held for a public use, subject to the approval of the voters.

The two sections are consistent with each other, and in entire harmony. They were enacted at different times, for different purposes, and deal with different classes of property. The General Assembly evidently thought that in the sale of property, not held for a public use, such as a fire engine which had ceased to be of any value to the town on account of changed conditions, it was a sufficient protection to have a sale at public auction, but that when the property belonged to the other class the approval of the voters, the real owners, should be had.

There is no reason for reading into the later section that the sale shall be by public auction, in addition to submitting the question to a vote, and to do so would impose a cumbersome, confusing procedure instead of one that is intelligent and easily understood.

If the position of the plaintiffs should prevail, the governing body of the town or city would have to offer the property at public sale, at which any one could bid, who could comply with the terms of sale, and after the highest bidder is ascertained the whole question would have to be submitted to a vote, while under the other view the governing body can advertise for bids, can consider the needs of the community, the ability to perform for the present and the future, and can present to the voters a mature plan for their approval or disapproval.

The second statute, in our opinion, substitutes a vote of the people as to property held for a public use, for a public sale of other property, and the will of the people having been fairly ascertained, as the plaintiffs admit, and emphatically expressed, as to a sale of their own property there is no reason for setting it aside.

If any further authority was needed, it is conferred by chapter 28, section 2, Private Laws 1917, which enacts:

"Sec. 2. That said town of Reidsville may sell or lease any of its public utilities, such as lighting plants or system mentioned in said subsection: *Provided,* in the event such sale or lease, which shall be approved by a majority of the votes cast in any election at which said proposition may be submitted; said election to be held under the same general rules, laws, and regulations of elections for town officers in the town of Reidsville."

There is some confusion in the language, but the intent is clear to give the power to the town of Reidsville to "sell or lease" its lighting plant without other restriction than the approval of the people at the polls, and as the sale has been made, and has been approved by a vote of 392 for the sale, and 68 against it, there is no valid reason for disturbing it.

There is not a scintilla of evidence that the utilities company is seeking to acquire a monopoly, and, on the contrary, it offers in its answer, and renews the offer in this Court, to abandon the contract of purchase.

It has done nothing except to make an offer to purchase the lighting plant for a certain amount of money, and upon certain conditions, which the governing authorities of Reidsville have accepted, and which has been ratified by popular vote on a legal referendum.

We should assume, in the absence of a finding to the contrary, that the mayor and aldermen of Reidsville, elected when the question of a sale of the lighting plant was acutely at issue, have acted in good faith, and that the voters had sufficient intelligence to understand the proposition, which they approved by their vote, and certainly we have no authority to deny to them the right to contract in reference to their own property upon the assumption of superior wisdom and business ability.

There are allegations of fraud in the complaint, which are denied in the answer, but no evidence to support the allegations has been introduced, and the exception to the refusal to receive such evidence has been abandoned, and is not referred to in the plaintiff's brief.

It would not, therefore, be just or according to law to base our judgment on unsupported allegations, and to make a part of our permanent records, so serious a reflection on the integrity of the mayor and aldermen of Reidsville as men and public officials without proof.

There can be nothing in the contention that two unrelated questions have been submitted to the voters, because the plaintiffs have agreed, by stipulation filed in the record, that the question of a sale of the lighting plant was submitted, and that "the election so held was confined to this question alone."

It is also agreed that the election was "duly called," and that "the machinery provided for the holding of said election, and the holding thereof, was such as provided by law."

Affirmed.

CLARK, C. J., dissenting: The powers of municipal corporations, as stated in Dillon Mun. Corp. (5 ed.), sec. 237, and approved in *Smith v. New Bern,* 70 N. C., 14, are as follows: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no other: First, those granted in *express words;* second, those *necessarily or fairly implied* in, or *incident* to, the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable." Rev., 2978 (originally enacted, ch. 112, Laws 1872-3), under the heading, "Municipal Property Sold," provides: "By mayor and commissioners at public sale. The mayor and commissioners of any town shall have power at all times to sell at public outcry, after thirty days notice, to the highest bidder, any property, real or personal, belonging to any such town, and apply the proceeds as they may think best."

The defendant, Southern Public Utilities Company, a corporation of the State of Maine, claims to have bought at private sale the valuable "lighting and power plant," the property of the town of Reidsville, for $30,000, being $20,000 less than was offered by the plaintiffs, who were shown to be responsible bidders and in direct violation of the above statute, for there was no sale "at public outcry, after thirty days' notice, to the highest bidder," which was the only condition under which the above section gave power to the commissioners of the town to sell. Said statute has never been repealed or amended in any way, and the action of the commissioners was therefore in violation of the terms of the statute conferring the power.

Indeed, the decisions of this Court, which have been unquestioned till now, held that even this section "did not authorize the sale or release of real estate which by the terms of the act of incorporation is to be held in trust for the use of the town, or to such real estate as is devoted to governmental purposes, as city hall, market house, etc., but a special act of the Legislature is necessary in such cases." *Southport v. Stanly,* 125 N. C., 464; *Turner v. Comrs.,* 127 N. C., 154. The Court went further and held that the Legislature could not authorize the sale of streets in reference to which bordering property owners had located improvements. *Southport v. Stanly, supra; Moose v. Carson,* 104 N. C., 431. The Legislature subsequently passed a general act as to the corporate powers of towns, which is now Rev., 2916 (6): "To grant, upon reasonable terms, franchises for public utilities, such grants not to exceed the period of sixty years, unless renewed at the end of the period granted; also to sell or lease any waterworks, lighting plants, gas or electric, or any other public utility which may be owned by any city or town: *Provided,* in the event of such sale or lease it shall be approved by a majority

of the qualified voters of such city or town, and also to make contracts, for a period not exceeding thirty years, for the supply of light, water, or other public commodity: *Provided,* this subsection shall not apply to New Hanover and Cumberland counties."

· It will be seen at once that this act does not modify the protection given to the people of the towns and cities of this State that the public property held by the town can only be sold "at public outcry after thirty days notice to the highest bidder," but that it allows the sale of the kind of property therein named (*provided,* there is, as required by sec. 2978, the above requirements of a sale open and aboveboard, by public outcry, and after thirty days notice, and to the highest bidder), when there is the additional guarantee that in such case there is an approval by a majority of the qualified voters of such city or town.

This is not only according to the well established rules that the whole of the Code must be construed together, and that the law does not permit repeals by implication, but it is in accordance with the well known conditions of modern society, in which huge aggregations of capital, incorporated usually in other States, are seeking to engross and take over the property, whether of State, county, city, or town, when that purpose can be attained by any means.

This section 2916 (6), according to the well settled principles applying to the interpretation of statutes, must be read in connection with section 2978, and the decision in *Southport v. Stanly.*

Chapter 28, Private Laws 1917, in no wise affects this well settled principle, but merely provides that the requirement in sec. 2916 (6) of approval by a majority of the "qualified" voters is modified to permit that in Reidsville the approval may be made "by a majority of the votes cast." Why Reidsville should be exempted from the safeguard of approval by the majority of the qualified voters, still required as to the sale of public utilities in every other municipal corporation in North Carolina, does not appear.

In the absence of a statute there was no authority in any town to sell any of its real estate of any kind held for public purposes. Rev., 2978, authorized the mayor and commissioners to sell the municipal property, "provided it was done at public outcry, after thirty days notice, to the highest bidder." The decisions of this Court, in the cases above cited, held that this did not authorize, even under those conditions, "the sale of real estate devoted to governmental purposes, as city hall, market house, street, etc." Subsequently, Rev., 2916 (6), authorized "the sale or lease of waterworks, lighting plants, gas or electric, or any other public utility which may be owned by any city or town," but with the additional guarantee—the word *"provided"* is used—in case of such sale or lease "the sale or lease shall be approved by a majority of the qualified voters of

such city or town," and the so-called Glidewell Act only modifies the latter provision by providing that as to the town of Reidsville the approval shall be sufficient if made "by a majority of the votes cast."

There has been no express repeal, and there is no implied repeal, of the guarantee of the safety of the property of any city or town, given by the requirement that a sale thereof can be made (if at all) only "at public outcry, after thirty days notice, to the highest bidder"—which was itself a modification of the common law which forbade a sale of real estate devoted to governmental purposes at all. *Winslow v. Morton,* 118 N. C., 486; *S. v. Johnson,* 171 N. C., 799; *S. v. Perkins,* 141 N. C., 797.

The effect of construing 2916 (6) to repeal by implication Rev., 2978, is that this corporation of the State of Maine has obtained, if this action is approved, the ownership of a public utility of the town of Reidsville, in the State of North Carolina, at a sum at least $20,000 less than that which was offered for it by responsible parties before the sale was made.

The plaintiffs allege that the property is worth $75,000, and that for many years it has produced a *net* income averaging more than $8,000 per annum. The chief relief asked, and justified by allegations and proof offered to support them (which was rejected by the Court), was not the temporary restraining order, which was merely ancillary, but to have the attempted sale set aside as fraudulent and void.

It is urged that the sale was approved by a popular vote, but it is apparent that there was no popular vote upon this question. No one will believe that the people of Reidsville would by popular vote approve a sale at $30,000 when $50,000 was offered at the same time by parties fully able to make the payment. The only proposition submitted at the election was whether the town should take $30,000 from this corporation or not sell at all.

There are allegations in the complaint that this result and method of making the sale was procured by fraud or corruption. There was no opportunity given to prove this, because an investigation was cut off by judgment for the defendants on the ground that the election had been held and the contract signed, though the question as to their validity still remained open. In 1 Lewis Southerland on Statutory Construction, sec. 267, it is said: "Repeals by implication are avoided if possible. If two statutes can be read together without contradiction or repugnancy, or absurdity, or unreasonableness, they should be read together, and both will have effect. It is not enough to justify the inference of repeal that the later law is different; it must be contrary to the prior law. It is not sufficient that the subsequent statute covers some or even all the cases provided for by the former, for it may be merely affirmative, accumulative, or auxiliary. There must be positive repugnancy, and even then

34—178

the old law is repealed by implication only to the extent of the repugnancy. If, by a fair and reasonable interpretation, acts which are seemingly incompatible or contradictory, may be enforced and made to operate in harmony and without absurdity, both will be upheld and the later one will not be regarded as repealing the others by construction or intendment. As laws are presumed to be passed with deliberation and with a full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the Legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to. the same matter, unless the repugnancy between the two is irreconcilable." To the same effect in sec. 247 of the same volume, and, indeed, all the authorities and precedents on the construction of statutes.

There is no repugnancy between Rev., 2916 (6) and Rev., 2978. The latter section remains in full force, therefore, in requiring the safeguard of a sale "at public outcry, to the highest bidder, after thirty days notice." The provision in the latter statute authorizes the sale by public utilities (if made in accordance with the terms of Rev., 2978), *provided,* that is, "but only if," there is the additional requirement of the "approval of a public vote." Without this provision of 2916 (6), even public utilities could not have been sold under the construction placed by the Court upon Rev., 2978, in .the cases above cited. The authority to sell even in compliance with the terms of Rev., 2978, of a "public sale, to the highest bidder, after thirty days notice," did not extend to the sale or lease of public utilities till Rev., 2916 (6), and then only with the "approval of a popular vote." *Elizabeth City v. Banks,* 150 N. C., 407.

In 2 Dillon Mun. Corp., sec. 801, it is said: "Where the charter or incorporating act requires the officers of a city to award 'contracts to the *lowest bidder,*' a contract made in violation of its requirement is illegal." And in sec. 809 he says: "The purpose of a statute requiring the letting of bids to the lowest bidder. is to invite competition, and to that end publicity of the intention to let the contract is of the essence of the proceeding. Hence, any *statutory provisions requiring advertisement* or specifying its nature, are usually to be regarded *as mandatory,* and failure substantially to comply with their requirements is sufficient to avoid the contract."

Under our statutes, read as they are required to be read, upon reason and authority, *in pari materia,* the proper and only valid course that this corporation of another State, seeking to acquire the municipal franchise of operating the Light & Power Plant of Reidsville, could pursue was as follows:

1. There should have been the approval of a popular vote, whether the town should sell its lighting system, on the terms stated in the advertisement.

2. If it was so approved by a popular vote, then the town officials, in compliance with Rev., 2978, should have advertised such sale by thirty days notice, and sold at public outcry to the last and highest bidder. Nothing less than this would be valid under the laws of this State, nor in compliance with the rules of prudence and fidelity to their trust, which the law exacts of all public officials in dealing with public property.

3. Even after such bid there would still have remained in the administrative officers the legal discretion to reject the highest bid and offer at resale if there was reasonable ground to believe that upon such resale a substantially better bid could be had. This is done in the sale of private property under decree of court, and certainly public officials should show the same solicitude and care in the disposal of public property.

The commissioners of Reidsville were certainly not warranted by law in submitting to the voters the question of sale or no sale of the lighting plant, to so phrase the submission as to require the electors as a condition of voting upon the sole question of sale or no sale to vote also in favor of a private sale to the Southern Public Utilities Company, and giving a thirty years franchise to it, and in further refusing to submit at the same time the proposition of the plaintiffs, shown to be responsible parties, to buy the same plant at the price of $50,000.

This Court, in *Winston v. Bank,* 158 N. C., 513, has condemned the course pursued in this case in the following unmistakable language, by *Mr. Justice Hoke:* "When a popular vote is required to authorize or validate a municipal indebtedness, the proposition should be single, and when the question presented embodies two or more distinct and unrelated propositions, and the voter is only afforded an opportunity to express his preference or decision on a single ballot, and on a question as an entity, the election, as a rule, is invalid, and on objection made in apt time, and in a proper way, may be disregarded."

This is the clear and convincing language used by *Mr. Justice Hoke,* quoting from many other learned judges, and especially approving the following language by *Mr. Justice Brewer* (later of the U. S. Supreme Court), in *Lewis v. Comrs.,* 12 Kan., 186, as follows: "It may be conceded that two or more questions may be submitted at a single election, provided each question may be voted on separately, so that each may stand or fall upon its own merits. But that is a very different matter from tacking two questions together, to stand or fall upon a single vote. It needs no argument to show the rank injustice of such a mode of submission. By it several interests may be combined and the real will of the people overslaughed. By this combination an unpopular measure may be tacked on to one that is popular, and carried through on the strength of the latter. A necessary matter may be made to carry with it

some private speculation for the benefit of the few. Things odious and wrong in themselves may receive the popular approval because linked with propositions whose immediate consummation is deemed essential. It is against the very spirit of popular elections, that aims to secure freedom of choice, not merely between parties, but also in respect to every office to be filled and every measure to be determined. A voter at a State election would be shocked to be told that because he voted for a person named for Governor on one ticket he must vote for all other persons named thereon; or that, voting for one person, he was to be understood as voting for all. He would feel that his freedom of choice was infringed upon. None the less is it so by such a submission as this."

So elementary and necessary a truth could not be more clearly expressed. It needs no repetition, but can be found stated in the legal decisions of all the courts that have treated upon the necessity of the utmost fidelity in the handling and disposition of public property by municipal officials. Many of these authorities are cited by *Judge Hoke* in the above case of *Winston v. Bank.*

The defendants, while averring the acceptance of a lower bid by a vote of the people, did not allege or contend that the $50,000 bid had been also submitted, nor that there had been any compliance with the unrepealed and unamended section 2978 of the Revisal, which is an express inhibition upon all power in municipalities to sell real or personal property except "at public outcry, after thirty days notice, and to the highest bidder."

The motion by the plaintiff for judgment upon the pleadings should have been granted because it appears thereon that there was no compliance with the requirements of that section, which was the common law and has been the statutory law in this State since chapter 112, Laws 1872-3. As to the defendants' defense that the sale has been ratified by the administrative officers of the town, it can need no citation of authority that if there was no authority to sell without compliance with the requirements of section 2978 there can be no ratification of action which was void because *ultra vires.* 2 Dillon Mun. Corp., sec. 797.

In *Edwards v. Comrs.,* 170 N. C., at p. 451, the Court said: "We were referred, on the argument to *Stratford v. Greensboro,* 124 N. C., 127, in support of the position that on the present record the action of the commissioners could well be made the subject of judicial scrutiny and control, but in that case there was specific allegation, with evidence tending to show that the action of the city authorities was in pursuance of a contract admittedly entered into with the individual defendant, and making it according to plaintiff's evidence, *not at all improbable that the measure complained of was in promotion of a personal and private scheme, in favor of the individual defendant, and not in furtherance of the public interests."*

In this case, as in that, "the allegations are specific and definite of issuable facts tending to establish official default." The authorities are numerous that the plaintiff as taxpayer has a right to challenge the action of the board of commissioners in rejecting a bid of $50,000 and submitting one in favor of the defendant corporation of $20,000 less. *Coughlin v. Gleason,* 121 N. Y., 631, and numerous other cases; *Mazet v. Pittsburg,* 137 Pa., 548; *Stratford v. Greensboro,* 124 N. C., 127, and others, which it is unnecessary to cite, for it should need no argument that when there are allegations, such as those made in the complaint in this case, of misfeasance on the part of the town officials and collusion by them with the purchasers by which the city lost $20,000, it is due to all parties concerned, and in the interest of public justice, that the facts should be determined by a jury of 12 honest men. Public officials should wish to be like Cæsar's wife, "above suspicion," and not shut off the investigation of such charges, when made in the courts by reputable citizens.

There was no sale to the highest bidder (but to one $20,000 lower), no advertisement, and no public outcry, as required by the statute. A bid was accepted for $30,000, and no submission of the higher bid then outstanding for $50,000, and the $30,000 was submitted as a part of the proposition to sell the municipal lighting plant so that the two propositions being intermingled a vote against accepting $30,000 was a vote against selling at all. The sale of public property upon a grossly inadequate price has been held ground for indictment. *S. v. Hatch,* 116 N. C., 1003.

The determination of such charges, when made in a court of justice in this State, should be made after the fullest investigation, and inquiry should not be cut off. The matter should not have been determined upon the technicality of the refusal of an injunction, which refusal was itself erroneous. This is not like the case of a tree cut down, which cannot be restored, nor like the recent case where, after the refusal of an injunction against a primary, the general election had been held. For here this action calls in question the validity of the election whenever it was held, and if in law it was invalid, the so-called election was a nullity. In any event, the plaintiffs were entitled to have it impeached, and the sale thereunder set aside, if the allegations of fact were sustained by the verdict of a jury, and they had a right to offer evidence in support of their charges, and to a verdict by a jury. The sale and the so-called election are not validated because they have occurred. The consummation of a fraud is no estoppel upon the courts to set it aside, if proven.

The very gist of this action was to call in question the legal right of the defendants to hold the election and to allege as a matter of fact that by reason of collusion and fraud it would be invalid if held. It is no

answer to these allegations of law and fact that, notwithstanding, such election has been held. If the contentions of the plaintiffs, either as to law or facts, are valid, then the so-called election was a nullity and should be set aside. To hold otherwise is to sustain the proposition that when an illegal act has been committed it cannot be investigated in the courts. These defendants proceeded with the alleged election and the alleged sale with notice of the plaintiffs' proceeding. They are put in no better position thereby if the plaintiffs can show the illegality of the proceedings or the alleged fraud and collusion in pursuance of which the alleged election and the sale were made.

If the law is as claimed by the plaintiffs, then the sale should be set aside. If the facts are as alleged by them, it should be equally set aside for that reason, and the plaintiffs are not cut off from an investigation by a jury of the allegations of fraud, because the defendants have accomplished their purpose to the extent of making the sale, if those allegations are found to be true.

The plaintiff moved for judgment because it affirmatively appeared from the answer of the defendants, and especially from the answer of the defendants, commissioners of Reidsville, that the town had attempted to make a private and not a public sale of its lighting plant to the defendant, "Southern Public Utilities Company," at the price of $30,000, privately and not publicly bid, which said price was by $20,000 less than could and would have been received from another responsible bidder, "who had validly and legally bound himself to pay said increased price upon any sale had in accordance with law, and that said sale was made in violation, notably, of sec. 2978, which prohibits all North Carolina corporations from conveying either their personal or real estate, except at public outcry, to the highest bidder, after thirty days advertisement."

2. Because Rev., 2916 (6), and ch. 28, Private Laws 1917, should be construed strictly in favor of the public, and as additional to, and not as an implied repeal of, Rev., 2978.

3. That compliance with said sec. 2916 (6), as amended by ch. 28, Private Laws 1917, was only one of the several requisite essential acts necessary to a valid alienation of municipal property.

 .        .        .        .        .        .        .

7. Because it affirmatively appears from the answer that as an integral part of the ordinance ordering the so-called election, and hence prior to any election, there was granted to the defendant "The Southern Public Utilities Company," a thirty years franchise to enter upon and occupy the streets of the town of Reidsville with a lighting plant, thereby cutting off the possibility of competition in the sale of its own lighting plant, even had it been exposed to sale by public auction, after due advertisement according to law.

On these grounds it was error to refuse the above motions for judgment in favor of plaintiff, and also for the further reason, heretofore given, that the submission of the double proposition of the sale, and at the same time, as a part thereof, the acceptance of the $30,000 bid by the Southern Public Utilities Company, and also the refusal to submit the proposition of a responsible bidder at $50,000 were illegal in fact and in law. *Winston v. Banks, supra.*

The defendants moved to dismiss the action because it appeared that the sale had been made and the election had been held. This was error, as has already been pointed out, for the election and the contract were both with notice of this proceeding, impeaching their validity in law, and the good faith in the sale of public property as a matter of fact, and the subsequent consummation of such illegal acts is not validated thereby, but was subject to investigation of the allegations of fact and the propositions of law set out by the plaintiffs.

It may well be doubted if a more important case than this has ever come before this Court. It is alleged in the complaint that the defendant, Southern Public Utilities Company, is essentially an *alias* for the Southern Power Company and the American Tobacco Company, or at least it is a mere subsidiary corporation. The defendant company denies the allegation as stated, but admits that all three have many stockholders in common. Whether there is not a more intimate connection in the ownership of the bonds, or a lease of the other corporations by one (which is not unusual), is not stated.

It appears from the official reports of the investigations in Congress of the water power in this country that 94 per cent of the total water power in North Carolina has, in one way or another, been acquired by corporations. If it is not identically one corporation, substantially one great corporation controls the situation, which is reaching out, as appears by the docket of this Court, to acquire a monopoly of the entire water power of this State. See *R. R. v. Southern Power Co.,* and other cases at this term. Not for nothing did our ancestors condemn monopolies in our Constitution, because they "are contrary to the genius of a free State and ought not to be allowed." Cons. N. C., Art. I, sec. 31.

This corporation has thus attempted to consummate its acquirement of the lighting and electric plant built by the town of Reidsville, at the expense of its taxpayers, and, admittedly, at a sum $20,000 less than that bid by a responsible party. It appears that it was a corporation of the State of Maine, and a subsidiary corporation of the Southern Power Company, which is seeking to run a municipal plant for a town in North Carolina. "There is a reason," though it has not been stated, nor has compliance by it with our statute been shown. It further appears not only that it has already acquired, by means not disclosed, other public

utilities in this State, but it appears from another case, now pending in this Court, that the Southern Power Company, with which it has close relations, admittedly is seeking to discriminate in its charges against a municipal plant in the town of Salisbury. If that discrimination were allowable, the Southern Power Company could speedily acquire the ownership not only of every municipal lighting and power plant in the State, but, by the exercise of such discrimination, it would sooner or later have it in its power to acquire every cotton mill or other industrial plant in this State dependent upon electric power, for the time is near at hand when, with the exhaustion of the coal beds, or interruption in their operation, no industrial plant in this State can exist with the discrimination of this great monopoly in charging it higher rates for electric power than it charges other plants of like kind. This would mean financial and political control of the State, and is a menace that is apparent and cannot be disregarded.

It is not desirable that powerful monopolies should thus engross the water power, the lighting and electric plants, of a whole State. The declaration in our Constitution against monopolies should be sacredly remembered and observed. This is more necessary now than when written by the great patriots who made it. Monopolies are dangerous, and should not be permitted to engross the power and lighting plants now in existence, either by purchasing those owned by the public, at an under price and without publicity, or to obtain the control of other industrial plants, whether public utilities or under private ownership, by being permitted to charge discriminatory prices, which is simply a form of confiscation.

It is true that in this case the judge found as a fact, upon the preliminary injunction, that there was no fraud or collusion. He could do so as to the injunction proceeding, though even as to that his findings would not be binding on this Court on appeal, and such finding has no effect upon the issues raised on the pleadings, in which fraud and corruption is clearly charged, and being denied, there are issues of fact which only a jury can determine. There are many allegations in the complaint of specific acts tending to show fraud, collusion, and improper influence, which, if found true by a jury, would entitle the plaintiffs to have the sale set aside, irrespective of the defendants' failure to observe the requirements of Rev., 2978, and of the illegal manner in submitting a double issue as above stated. These allegations of fraud and collusion the plaintiffs are entitled to have submitted to a jury.

The prayer for relief in the complaint is to declare the attempted sale fraudulent and void, and to set it aside, and for a restraining order until the issues are determined by a jury. The plaintiffs asked to introduce evidence in support of their allegations of fraud and collusion, but this was refused by the court, and the action was dismissed.

It is due to the defendants, as well as to the plaintiffs, and in the interest of public justice, that these charges should be investigated and determined by a jury, and it was error to dismiss this action.

There are in the complaint the fullest and most specific charges of fraud and collusion against the defendant Southern Public Utilities Company, and the authorities of the town of Reidsville, and that said company was a branch of the American Tobacco Company and the Southern Power Company, with their widely extended properties, and that the American Tobacco Company was active in procuring the election of the defendant mayor and commissioners. There are other specific acts of collusion and misconduct charged, and that the defendants used improper means to influence the vote at the election on the sale of the property to themselves at an under price. These allegations were denied, but the plaintiffs were entitled to have the issues arising thereon, with the inferences, submitted to a jury. There was no opportunity to prove these allegations, for the judgment recites: "The plaintiffs thereupon offered to introduce evidence of all allegations in the complaint not admitted by the answers of the defendants, which motion (or offer to introduce evidence) is hereby denied, and the plaintiffs in apt time except."

The appeal brings up this judgment for review, and this exception was earnestly presented on the argument here, and is also presented by the plaintiffs in the brief, on page 10, alleging "the allowing defendants' motion to dismiss the action" as one of its *chief grounds* of appeal, and again on page 41. Indeed, this denial to the plaintiffs of the right to trial by jury of the serious issues of fact raised by the allegations in the complaint runs through the entire appeal as the substratum and foundation of the appeal. It is not shown that the official body of Reidsville committed fraud and collusion in the sale of this property, but it is clearly and distinctly averred, and denied, and the plaintiffs had a right to have opportunity to prove it to a jury. The brief also avers, and stresses with full citation of authorities, the exception that two unrelated matters were illegally submitted to a vote, to the great prejudice of the plaintiffs.