W. Z. Morton, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 87836. Promulgated September 14, 1938.

*Geo. D. Brabson, Esq.,* for the petitioner.
*F. R. Shearer, Esq.,* and *B. M. Brodsky, Esq.,* for the respondent.

538

## OPINION.

Opper: The issue in this proceeding may be briefly stated as follows: Did the pendency of certain litigation relating to the mortgage prevent a foreclosure sale held in a prior year from being the closed and completed transaction which fixes the time of loss?

Counsel for both sides have cited numerous authorities, petitioner contending that this is similar to the cases holding that a foreclosure sale does not fix the event of loss until any redemption period has expired;[1] and respondent urging as controlling those authorities establishing that the mere possibility of future recoupment, compensation, or deduction remaining to a taxpayer does not prevent or reduce his loss in the year the loss actually occurs.[2]

It seems to us neither principle disposes of the contentions advanced in this case, the former because petitioner's right to avoid the sale was at best doubtful and has in fact never been settled, whereas in the cases cited the right of redemption is clear and absolute while it remains; and the latter because petitioner urges this,

---

[1] *Frederick Krauss*, 30 B. T. A. 62; *J. C. Hawkins*, 34 B. T. A. 918. See also *Derby Realty Corporation*, 35 B. T. A. 335.

[2] *United States v. White Dental Manufacturing Co.*, 274 U. S. 398; *Lewellyn v. Electric Reduction Co.*, 275 U. S. 243; *Lucas v. American Code Co.*, 280 U. S. 445; *Burnet v. Sanford & Brooks Co.*, 282 U. S. 359; *Burnet v. Huff*, 288 U. S. 156; *Newman & Carey Subway Construction Co.*, 37 B. T. A. 1163; *National Contracting Co.*, 37 B. T. A. 689; *South Dakota Concrete Products Co.*, 26 B. T. A. 1429; *Carolina Contracting Co.*, 32 B. T. A. 1171; *E. R. Hawke*, 35 B. T. A. 784.

not as a case of recoupment or compensation for a loss indisputably occurring in the tax year, but rather as a situation where the loss of the property itself was uncertain and depended upon the result of the pending litigation. It is with this contention that we feel required to deal first, for, unless the facts warrant petitioner's position in this respect, his entire claim is without foundation.

The first action commenced was one in which petitioner was plaintiff and the trustees under the deed of trust were defendants. The relief prayed was that the latter be enjoined from executing a deed to the mortgagee, which was the purchaser, and that the mortgagee account for sums already received. As to the second request for relief, it is apparent not only that it was purely ancillary to the first, but that it could not, by itself, be effective to avoid the sale, and that it was directed against a stranger to the action. The application to enjoin the delivery of the deed is in a different category and might have been sufficient to sustain petitioner's contention. The difficulty is that a preliminary restraining order was almost immediately vacated, and the trustees proceeded to convey the property— all this prior to the fiscal year before us. After that had been done it is difficult to see what further effect the action could have had. True, the case is said to have taken its place on the calendar and could have been reached for trial. But, supposing it had, the plaintiff would have been in no position to benefit. Not only will equity decline to do a vain thing, *Galloway* v. *Board of Education* (N. C.), 114 S. E. 165; *Allen* v. *Town of Reidsville*, 178 N. C. 513; 101 S. E. 267, but even if a decree were issued in accordance with the prayer for relief, it would merely mean that no deed could thereafter be made by the trustees. That was immaterial because, presumably, they had no intention of giving a further deed, and the mortgagee's title was not there in litigation. So much is in effect conceded on petitioner's brief and by the testimony [3] of the attorney who represented petitioner at that time. We think this action did not and could not have the effect of casting doubt upon the finality of the sale.

The second suit was brought by the mortgagee against petitioner and his wife to recover the deficiency remaining after the proceeds of sale had been applied on the mortgage debt. In his answer in that litigation petitioner sets up certain affirmative allegations, and prays:

1. That the action be dismissed * * *.

2. That the purported sale of the lands by the Receivers [of the Trustee] be declared null and void.

---

[3] "After the trustee had completed the conveyance of the land, as his formal duty, I may say then our cause of action would be against the bank for damages for having ordered this sale."

Petitioner is on a fiscal year basis ending March 31. The summons in that suit was dated March 29, 1932, so that if the latter date is conclusive, the proceeding was pending at the end of the taxable year in which the sale took place. There is some doubt whether the service of the summons several days later, or the date of petitioner's answer, would not more accurately fix the time of pendency. But whether that be true and, if true, whether it be material, we need not discuss, for in our view this action, like the first one, seems wholly insufficient to raise any real issue as to the validity of the sale. The suit was brought at law to recover a money judgment. Nothing characterized as a counterclaim or cross-bill appears in the answer, and the new matter to which we have already referred is merely set forth as "further answering the complaint." But aside from this, petitioner's answer would at most be a collateral assault upon a proceeding ostensibly conducted under due form of law, and an attempt to invoke, in a law action, the powers of a court of equity. Neither appears to be permissible in North Carolina. *First Carolina's Joint Stock Land Bank, Inc.* v. *Stewart*, 208 N. C. 139; 179 S. E. 463. That this litigation was not regarded as affecting the sale, but only as a means of negotiation for repurchase or settlement, is borne out by the testimony of petitioner [4] and by the form of the compromise agreement.

And we may not assume the possibility of later amendment or other alteration of petitioner's position. For petitioner's whole claim is founded upon the pendency of litigation which in and of itself has the effect of making uncertain what would otherwise appear to be certain, of keeping open and incomplete what would otherwise be closed and completed. Nor are we concerned with any right petitioner may have had to compensation in money damages,[5] or by way of set-off or recoupment in the mortgagee's action for a deficiency, for

---

[4] "Q. Did you consider that you had a right to redeem the property?

"A. Yes, sir. It was being done in eastern North Carolina at that time. A good many people lost their farms just like I did this, and they would go into court and the court would see that you got your farm back. In other words, pay whatever it was sold for and make the proper arrangements, and you could get back your land. There were a good many cases like that in eastern North Carolina.

\* \* \* \* \* ` \* \*

"Q. \* \* \* In other words, such attempt at redemption as you made was simply through the medium of this suit against the Joint Stock Land Bank?

"A. The fact that I went up to Durham and conferred with those people and made two trips up there, trying to come to some kind of trade so that we could get the land back, and failed in it. I could not borrow any money then. I needed money, and you could not borrow money then."

[5] The attorney who represented petitioner at the time the litigation was pending, on being asked why the North Carolina Court in dissolving the temporary restraining order in the first action reached the conclusion that no irreparable injury would result to petitioner replied: "I could not say why he reached that conclusion. That is what he said, thinking that there was a money consideration that we could recover against the bank for any damages we had sustained." And see footnote 3, *supra*.

that would not impair the finality of the sale nor postpone the loss of the property.[6] Petitioner's brief states his position to be that a sale does not close a transaction "where the validity of the sale itself is in question, for if it should be determined later that the sale is invalid, then it is a nullity and being a nullity it can not be the identifiable or determinative event"; and at another point: "The purchase of the land, the sale and the law suits attacking its validity, involve the same property * * *. These things must of necessity all be determined before a loss can be ascertained and allowed." The "validity of the sale itself was in question" if at all only by reason of "law suits attacking" it. The sale and the subsequent vesting of title were on their face closed and completed transactions fixing the time of loss.[7] On petitioner's own argument it must be the actual pendency of litigation capable of nullifying them which, if anything, would alter that apparent finality. As we have seen, no such litigation was actually pending on the evidence before us. Whether on more appropriate facts such a claim could ever be sustained we find it unnecessary to decide.

*Decision will be entered for the respondent.*

---

[6] See footnote 2, *supra*.
[7] In *J. C. Hawkins, supra*, page 920, we said: "* * * where the loss is in reference to real estate, it has been held in a long line of cases that a sale of the real estate alone satisfies the requirement. * * * And, that conveyance must be absolute."