JOHN CLEE ET AL. V. WILLIAM SANDERS, JR., ET AL.

*Taxes—Private purposes—Equity.*

1. It has so often been decided in this State and elsewhere that taxation for private purposes is unlawful, that the doctrine need not be referred to at length.

So *held*, where a village, in consideration of the location near it of a factory, and its operation for a term of years, agreed to expend $1,200 in making public improvements by draining a marsh and improving the highways around the site of the factory, etc., for public sanitary purposes, as stated in the resolution, which sum was appropriated for the purposes named, and a tax levied to raise the same.

2. Equity will interfere at the suit of tax-payers, in like manner affected, to prevent the enforcement of a tax levied in a village ostensibly for public purposes, but really in aid of a private enterprise.

Appeal from Wayne. (Brevoort, J.) Argued April 10, 1889. Decided April 24, 1889.

Bill to restrain collection of a certain village tax claimed to have been illegally levied. Defendants appeal. Affirmed. The facts are stated in the opinion.

*J. W. Donovan,* for complainants.

*George W. Coomer* (*Henry M. Cheever,* of counsel), for defendants.

CAMPBELL, J. This bill was filed by complainants, who are property owners and tax-payers of the village of Fenton, to restrain defendants, who are the council of that village, from enforcing a tax of $1,200, which is claimed to have been for a donation by way of bonus to induce a certain firm, named "O'Donnell & Co.," to establish a stave-mill in Fenton, which is supposed to be regarded as a desirable improvement.

The record shows that in September, 1887, a contract was made purporting to be on behalf of the village with O'Donnell & Co., the substance of which was as follows: O'Donnell & Co. agreed to locate a heading, stave, hoop, and saw mill on the south boundary of the village, and run the same for five years, by giving average daily employment to 70 persons. In consideration of this the village agreed—

"To expend $1,200 in making public improvements by draining the marsh, and improving the highways and streets, around the grounds to be occupied by the said N. & H. O'Donnell, and constructing docks, harbors, etc., for public sanitary purposes, in accordance with the resolution of the said board of trustees of said village; and further agree to exempt said N. & H. O'Donnell from corporation tax for the term of five years. Said $1,200 to be deposited in the Detroit National Bank of Detroit, Mich., subject to check of N. & H. O'Donnell, as soon as N. & H. O'Donnell commence building the mills."

This contract was accepted by a vote of the council, and a resolution adopted to appropriate and expend $1,200, reciting the same purposes and in the same language set out in the contract.

That this is a matter of appropriation for the private purposes of N. & H. O'Donnell is too plain for discussion. Taking all the record together, it is evident that the sanitary theory is a mere cover for what was neither intended nor required for sanitary purposes. Neither the methods chosen nor the end in view had anything to do with public health. The work was to improve the O'Donnell property by creating a navigable channel and land approaches and docks, which were for no public purpose, and were purely private advantages; and, as they were to spend the money themselves in their own way, there was no semblance left of public improvement by the village. It has been so frequently decided in this State and else-

where that taxation for private purposes is unlawful, that we need not refer to the doctrine at length. Counsel did not attempt to impugn it.

The chief defense was that the complainants should have paid their taxes, and resorted to legal action to recover them, and that, as most of them owned personalty which could be resorted to for collection, there was no occasion for equitable interference. There are no doubt many cases where equity will not interfere to protect invasions of personal property. There is no such universal rule, however, and where the remedy at law is not entirely adequate, and where peculiar difficulties intervene, the jurisdiction is upheld. In the present case the complainants have filed their bill under the practice which permits the joining in one suit of several complainants whose grievance is precisely the same, and from the same cause. These complainants represent a considerable amount of money charged against them by the $1,200 tax. If that money is collected and paid over to O'Donnell & Co., any judgment they might obtain against the village would have to be contributed to by themselves on a tax raised to pay such judgment. It is important for them to stop the mischief in the outset. The case also involves a fraudulent and oppressive combination to do an illegal act at the expense of the tax-payers of the village under a pretense of preserving the public health; and the various parties aggrieved are allowed to sue together, although not jointly interested, for the express purpose of avoiding multiplied suits, and having the controversy settled as far as may be in one hearing.

They do not attempt to restrain anything but the illegal tax of $1,200, and therefore no difficulty arises from any attack on such taxes as are valid. The fact that this has been so covered up in the assessment roll as not to show its identity is an additional reason why equitable

protection should be granted. We have at the present term affirmed the propriety of equitable relief in cases of fraudulent action in regard to a scheme of valuation of a certain class of property at a small percentage. *McMorran v. Wright*, 74 Mich. 356 (41 N. W. Rep. 1082); *Walsh v. King*, Id. 350 (41 N. W. Rep. 1080). The protection of citizens against the wrong and oppressive dealings of public officials is a not uncommon instance of relief in equity. No inflexible rule can be laid down in these cases. An adequate legal remedy will generally suffice to make courts of equity hesitate in acting. But inadequacy may arise from other causes than the mere forms of remedy, and it will not do to sacrifice justice against convincing facts.

No objection was made to the bill for want of parties, and none was made on the argument. The defendants represent the village authorities, and a decree will be efficient against them. The bill is certainly meager, and open to some criticism, but it contains the substance of a good case, which is made out by proof.

The decree must be affirmed, with costs.

The other Justices concurred.