W. O. STRATFORD v. CITY OF GREENSBORO and CAESAR CONE.

(Decided March 7, 1899).

*Municipal Powers—Public Use—Eminent Domain—Streets— Issues—Judge's Charge—Tax Payer—Property Owner.*

1. While there can be no objection, morally or legally, to a property owner contributing to the expense of laying out or altering streets in a town, because of the incidental benefit he may derive, still the projected improvement must be of a character required by public necessity and convenience.

2. By virtue of their delegated powers, municipal authorities have the right to open, grade and widen streets, and they are the sole judges of the necessity or expediency of exercising that right for public uses; but whether the appropriation of private property is for public use or for private gain, is a matter for the Courts to decide; whether a particular use is public or not, is a question for the judiciary.

3. A resident taxpayer has a sufficient interest in the subject to invoke the Courts to prevent an illegal disposition of public funds, or the illegal creation of a public debt, or to prevent the misuse of corporate power.

4. Where the substantial benefit is for the individual and the public benefit merely incidental or prospective, the proceeding of a municipal board is *ultra vires* and void.

5. In such cases an issue should be submitted to a jury, with instruction from the Court as to what constitutes a public use.

CIVIL ACTION by the plaintiff, a tax payer, resident of Greensboro, to enjoin the city authorities from opening, widening, grading, curbing and macadamizing certain streets in Greensboro, and building an iron bridge across the Piedmont Railroad, and from borrowing $15,000 to be used for such purposes; also to restrain defendant Cone from lending them the money, upon the alleged ground that the proposed action by the Board was not undertaken for the benefit of the public, but at the instance and for the private benefit of said Cone, a large landed proprietor of city property. The case was tried before *Robinson, J.,* at June Term, 1898, of GUILFORD Superior Court, and is fully stated in the opinion.

There was a verdict and judgment for the defendants and appeal by plaintiff.

*Mr. James T. Morehead,* for plaintiff (appellant).
*Messrs. Bynum & Taylor, R. R. King* and *Shaw & Scales,* for defendants.

MONTGOMERY, J. At the time of the commencement of this action the defendant Cone was the owner of about sixteen hundred acres of land (less that part of it which he had sold to the Cone Export and Commission Company, of New York, in which company he was a stockholder), situated on the north and northeast of the City of Greensboro and lying partly within the corporate limits of the city, that part lying within the city limits containing between three hundred and five hundred acres. That property was connected with the city by the street, Summit avenue. On the 21st and 24th days of January, 1896, the board of aldermen of Greensboro made an order that a portion of Church street be widened and then extended as a new street from Lindsay

street in a northeasterly direction to and on the line of Summit avenue, and then over said avenue as at first laid out to the corporate limits of the city, and that the strip of land necessary for the street be condemned according to law.   On the 7th of February following the board made an order providing for the borrowing of a sum of money not exceeding $15,000 for the purpose of opening and building the streets referred to in the orders of the 21st and 24th days of January, 1896, and repairing other streets and other public improvements in the city, and also for an election to be held for the purpose of submitting the question of the creation of the debt to the qualified voters of the city.

The plaintiff, a resident and tax payer of Greensboro, brought this action to have these orders made by the board declared *ultra vires* and void; that the defendant board of aldermen be perpetually enjoined and restrained from holding the election and from opening the streets, and that defendant Cone be restrained from lending to his co-defendant, the City of Greensboro, the money with which to grade and macadamize, curb and bridge the stret, to be called Summit avenue.   In the complaint the plaintiff alleges that the opening and making of the new street and the widening of Church street are not necessary and not required for the public use of the city, but on the contrary that they were to be made for the private use and benefit of defendant Cone; that such benefits as might accrue to the city were only incidental, and that the aldermen had entered into a contract with defendant Cone to make the orders concerning the opening of the streets by which many private advantages would accrue to him upon his paying to the owners of the condemned lands the assessed or agreed damages, all of which are set out in paragraph five of the complaint, which is in the following language: "That in order to carry out his wishes of improv-

124—9

ing his property outlying the city limits, and other personal and private advantages to be gained thereby, he and his co-defendant, the City of Greensboro, acting through its mayor and aldermen, have entered into a contract in which it is agreed that Cone shall pay for the right-of-way over the land of the property holders, except that of the First Presbyterian Church, over which said proposed Summit avenue will run, to build ten houses (whether cheap cottages for operatives or other kind of houses the plaintiff does not know, as nothing in said contract discloses,) on his property lying within the city limits, and to move to Greensboro the offices of the Cone Export and Commission Company, a foreign corporation, which pays no taxes to the State, county or city, and to lend to the City money sufficient at six per cent. per annum, payable semi-annually, to perform its part of the contract, and the City is to at once grade and macadamize, ditch and curb said street, from North Elm street to the corporate limits, and to build an iron bridge over the track of the Southern Railway, which said street crosses."

The plaintiff further alleged that the defendant City was not authorized in law to take the property of its citizens for private use, although by such a course incidental benefit might accrue to the City, and that all of the acts done and threatened to be done under the orders of the board, made in reference to the opening and widening of these streets, were *ultra vires.*

The judgment prayed for by plaintiff was that the alleged contract, and the action of the board in condemning the lands for the new street, be declared unlawful and *ultra vires,* that its action looking to the borrowing of money from Cone for the purposes alleged in the complaint is unlawful, and that defendants be restrained from further proceedings in the matter.

STRATFORD *v.* GREENSBORO.

In their several answers the defendants aver that the proceedings of the board were in good faith, that the opening of the new street and the widening of Church street were necessary and for the public benefit, and that of these matters the determination of the board was final. In the answer of the City, however, to paragraph five of the complaint, the contract alleged by the plaintiff as having been made between the City and Cone is denied, out and out, while Cone in his answer avers that the contract was made as set out by the plaintiff in paragraph five of the complaint, and that he was ready then to comply with it in every respect. This contradiction in the two answers is so apparent as to attract attention. If it was the only fact connected with the transaction in reference to the connection Cone had with the enterprise, the contract would not be material. There can be no objection to the contributing of an individual to the expense of laying out or altering a street, nor will such an act prove that the property was taken for the accommodation of private individuals and not for public use. If in point of fact the public necessity and convenience require the improvement of a street or the opening of one, it can make no difference who pays the damages of condemnation. It might be that a party contributing a part or the whole of the assessed damages in the condemnation of land for a public street when the public necessity requires such street, might have lands adjacent which might be improved by the opening of the street, and surely if nothing else appeared it would not be either immoral or illegal for him to pay the damages growing out of the condemnation proceedings. *Chicago, etc., R. Co. v. City of Naperville,* (Supreme Court of Illinois) N. E. Rep., 335; *Parks v. Boston,* (8 Pick., 218), 19 Am. Dec., 322. But the contradiction in the answers was significant. The following were the issues submitted to the jury:

1. Was the resolution passed by the board of aldermen of the City of Greensboro at its meeting on the 21st day of January, 1896, for the purpose of widening Church street and opening Summit avenue, the result of a colorable collusion between said board and Cæsar Cone or any other person?

2. Has said street been opened?

3. Has the money, to restrain the borrowing of which this suit was instituted, been borrowed?

The plaintiff excepted to the issues. The exception to the first issue ought to have been sustained. It was framed on the view that in all cases where municipal authorities proceed to open and build new streets, having authority so to do in their charter or general law, such proceedings can not be made the subject of judicial investigation except in cases of *actual* fraud. That is an erroneous view of the law in such cases. In cases where the municipal authorities are empowered by the general law, or by their charters, as in this case, to open up, grade and pave streets, the *expediency* or *necessity* of doing so, and the power of exercising the right of eminent domain, condemning the private property of the citizen for that purpose, are entirely within the determination of the corporate body, and their action is conclusive against judicial interference, since such a question is not judicial; it is political. 2. Dillon Mun. Corp., section 600. When the use is public, the necessity of expediency of appropriating any particular property is not a subject of judicial cognizance. Lewis on Em. Domain, section 238; *Boom v. Patterson,* 98 U. S., 403; *Broadnax v. Groom,* 64 N. C., 244; *Vaughan v. Commissioners,* 117 N. C., 434. It is also true that municipal authority, when lawfully exercising the power of condemning private lands for the public use, do and must determine, in the first instance, that the use to which they intend

the land is *public use*. But that decision is not conclusive. But whether the use of the property which the delegated legislative authority has declared to be a public use *be such a use* as would sustain the authorities in taking, against the will of the owner, his property, is a judicial question. If the taking be in fact for the purposes of private use, if the basis of condemnation be the benefit of an individual and not the public interest and convenience, the Courts can not be concluded by the action of legislative authority from exercising jurisdiction in determining whether the use is a *public* use or one for *private* gain and advantage. 2 Dillon, *supra,* section 600; *Call v. Wilkesboro,* 115 N. C., 337. All the Courts, we believe, concur in holding that whether a particular use is public or not within the meaning of the Constitution, is a question for the judiciary. Lewis, *supra,* section 158; Cooley on Taxation, 110, 120; *Clark v. Sanders,* 74 Mich., 692.

But the defendants contend that even if the question, whether the use for which private property has been taken is a public use, is a matter for judicial determination, the plaintiff is not the proper person to raise that question, for the reason that he was not the owner of any part of the land taken by the defendant corporation in the opening of the streets, and therefore he has suffered no injury on account of that proceeding. It is certain, however, that in cases where the board of aldermen of a town or city have taken private property for private use under the claim of exercising the right of eminent domain for the public use, that a resident tax payer may have his remedy in the Courts against the proceedings and may have them declared *ultra vires* and void, thereby saving himself from the imposition of unjust and unlawful taxes that would be required to meet the expenses of such unlawful proceedings. If such rights were

denied to exist against municipal corporations, then tax payers and property owners who bear the burdens of government would not only be without remedy, but be liable to be plundered whenever irresponsible men might get into the control of the government of towns and cities.

In *Crompton v. Vabriskie,* 101 U. S., 601, Mr. Justice FIELD said, in delivering the opinion of the Court, that "of the right of resident tax payers to invoke the interposition of a Court of equity to prevent an illegal disposition of the monies of the county, or the illegal creation of a debt which they, in common with other property holders of the county, may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the State Courts in numerous cases, and from the nature of the powers exercised by municipal corporations, the great danger of their abuse, and the necessity of prompt action to prevent irremediable injuries, it would be eminently proper for Courts of equity to interfere, upon the application of the tax payers of the county, to prevent the consummation of a wrong when the officers of these corporations assume, in excess of their powers, to create burdens upon property holders. Certainly in the absence of legislation restricting the right to interfere in such cases to public officers of the State or the county, there would seem to be no substantial reason why a bill by, or on behalf of individual tax payers, should not be entertained to prevent the misuse of corporate power."

In *Baltimore v. Gill,* 31 Md., 375, it was held that resident tax payers could restrain the corporation and its officers from taking steps to carry out a city ordinance creating a debt and a violation of the Constitution.

In the case before us, the main question raised by the pleadings was whether the use, to which the new street and improvements were to be devoted, was a public use. It was

not necessary on the part of theu plaintiff to allege or prove actual fraud in the transaction. If the substantial benefit was for the defendant Cone as an individual, and the benefit to the city only incidental and purely prospective, then the proceedings of the board were *ultra vires* and void. An issue should therefore have been submitted as to whether the action of the board, in making the orders and carrying them out, was for the public benefit, and whether the lands condemned were for the public use; and upon that issue the Court should have instructed the jury in the law as to what constitutes a public use. In addition, the language of the issue that was submitted was doubtful as to its meaning, and it was submitted without instruction except that if the jury believed the plaintiff's evidence they should answer it "No." There was evidence of the plaintiff going to show that the basis of the orders and acts of the board of aldermen was the private benefit of Cone, and the instruction was erroneous even if the issue had been properly framed and submitted.

There was error, for which there must be a new trial.

New trial.