STATE *v.* SCOTT.

STATE ON THE RELATION OF THE ATTORNEY-GENERAL, AND D. H. McCULLOUGH, v. GEORGE D. SCOTT ET AL., CONSTITUTING THE STATE BOARD OF ACCOUNTANCY.

(Filed 30 November, 1921.)

1. **Public Accountants—Accountants—Statutes—Police Powers.**

Our statutes creating a State Board of Accountancy and giving them authority to pass upon applications and issue licenses to those qualified as public accountants, are within the exercise of the police powers of the State, in which the public are interested, as well as one to whom a certificate has been issued, and the State is also interested in the requirement that moneys collected and not necessary to the purposes of the act be turned into the State Treasury. C. S., 7008 to 7024, inclusive.

2. **Parties — Motions — Appeal and Error — Supreme Court—Attorney-General.**

Where an injunction is sought in a suit brought against the State Board of Public Accountancy by a certified public accountant under the provisions of our statute, alleging that the defendant was attempting to do an *ultra vires* act in holding an examination beyond the boundaries of the State, and unlawfully diverting the funds, and exception has been taken in the lower court, that the suit should have also been brought State *ex rel.* the Attorney-General, etc., an amendment to this effect may be allowed in the Supreme Court, so that the case may be heard on its merits, it appearing that the defendant will not thereby be prejudiced. C. S., 7008 to 7024, inclusive.

3. **Same.**

The Attorney-General may of his own motion, or upon the complaint of a private party, become a party to a suit that seeks to prevent an *ultra vires* act or the misapplication of a fund in which the public is interested.

55—182

**4. Public Accounts—Accountants—Statutes—Public Officers.**

The provisions of C. S., 7008 to 7024, inclusive, creating and incorporating the State Board of Accountancy, confers upon its members continuous *quasi*-judicial powers as an arm of the State Government in which the people of the State are interested, both as to their administration and to a certain extent in the funds of the board, the compensation of members being paid by fees fixed by law, any surplus to be deposited in the State Treasury, and in these, and in other respects, its members are to be regarded as State officials to the extent of their duties specified in the statute.

**5. Same—Jurisdiction—Territorial Limits—State Officials.**

The exercise of the powers of the State Board of Accountancy, the members of which are to be regarded as State officials, is coextensive with the State boundaries, and may not be exercised beyond them, the word jurisdiction embracing not only the subject-matter coming within the powers of officials, but also the territory within which the powers are to be exercised.

**6. Same—Quasi-Judicial Powers.**

The examination and granting license to applicants for certificates as public accountants, beyond the borders of our State, being the exercise of a *quasi*-judicial power, under the police powers of the State, is void, and an injunction will lie to prevent it, in a suit of the State *ex rel.* Attorney-General and an accountant holding a certificate from the board, who is also a citizen and taxpayer of North Carolina.

**7. Same—Statutes.**

The legislative intent will not be construed by implication to extend the exercise of a *quasi*-judicial power by public officers to places beyond the State boundaries, as where the statute creates a State Board of Accountancy, gives it the power to examine and license applicants, and states that the board may do so "at such place as it may designate"; for the presumption being against the exercise of such extra territorial power, the discretion of the board in the exercise of this power will be confined to places within the boundaries of this State.

**8. Same—Ultra Vires Acts—Courts.**

Where a statute prescribes the means for the exercise of a power granted by the act, no other or different means can be implied as being more effective or convenient, and the Legislature having incorporated a State Board of Public Accountancy, giving it the power to determine upon examination whether applicants for license therein are qualified to receive them, it is for the courts of the State, upon proper action, to pass upon the question of whether the board acts *ultra vires* in holding an examination beyond the boundaries of the State upon the request of non-residents desiring to obtain a certificate, and a declaration in the fixing of such place that it would be the last time the board would hold an examination outside the State is not binding or controlling on the question.

**9. Injunction—Pleadings—Demurrer—Evidence.**

In a suit asking for an injunction, a demurrer admits the allegations of the complaint, and the Supreme Court, on appeal, will not settle the

controversy on conflicting evidence; and where the defendant's admissions upon the demurrer justifies it, the injunction should be continued to the hearing.

**10. Injunction—Ultra Vires Acts—Public Accountants—Acts Committed—Continuing Powers.**

Where an injunction is sought to restrain an *ultra vires* act of the State Board of Public Accountancy in holding an examination for the applicants for license as public accountants, beyond the boundaries of the State, the courts, upon sufficient evidence or admissions, will continue the restraining order to the hearing, to prevent the commission of such acts in the future, and the objection cannot be successfully maintained, that the specific act complained of has been committed and leaves nothing for such order to operate upon, nor will the declaration by the board that they will not do so in the future affect the matter.

APPEAL by plaintiff from *Ray, J.,* at chambers, 9 June, 1921, from MECKLENBURG.

This action was brought by the plaintiff, who is a duly certified public accountant, to enjoin the defendants from exercising certain of their duties beyond the limits of the State, and, to be more exact, from examining applicants for license and certificates to practice, as public accountants, beyond the State and in the city of Washington, D. C.

The case was tried below on demurrer to the complaint and the motion to vacate a restraining order theretofore granted. The court sustained the demurrer and vacated the restraining order, and refused a preliminary injunction to the final hearing. Plaintiff appealed.

*Cochran & Beam and Carrie L. McLean, for plaintiff.*
*E. R. Preston and James A. Lockhart, for defendant.*

WALKER, J., after stating the case: The State Board of Accountancy was created by a special act of the Legislature of 1913, the act being chapter 157 of the Public Laws of 1913, brought forward in the Consolidated Statute as chapter 116, sections 7008 to 7024, inclusive. The function of this board is to examine applicants and grant certificates, as certified public accountants of the State of North Carolina, to those giving evidence by such examination that they are qualified. The statute provides (C. S., 7010) that: "The board shall determine the qualifications of persons applying for certificates under this chapter, and make rules for the examination of applicants and the issue of certificates herein provided." The statute further provides (C. S., 7016): "The examination shall be held as often as may be necessary in the opinion of the board, and at such times and places as it may designate, but not less frequently than in each calendar year."

Before entering upon a discussion of the merits, we will first consider a preliminary question based upon the motion of the plaintiff in this Court to make the Attorney-General a party as coplaintiff, so that the title of the case shall be *"The State on the relation of the Attorney-General and D. H. McCullough,"* as plaintiffs, against the present defendants. The defendants resist the granting of this motion on the ground that the amendment here will deprive them of the benefit of their second ground of demurrer taken below, that plaintiff had no right to bring this action, and that this Court will not allow an amendment, when such a result will follow. This is true generally as the cases cited by the defendants show. *West v. R. R.,* 140 N. C., 620; *Bonner v. Stotesbury,* 139 N. C., 3; *Wilson v. Pearson,* 102 N. C., 290; *Grant v. Rogers,* 94 N. C., 755. And they further contend that it would substitute a new cause of action. If we could see that such would be the result, and that defendants would be prejudiced thereby, we might deny the motion, but it does not so appear to us. The plaintiff has some interest in the cause of action, as a member of the class for whose benefit this law was enacted, and is subject to the general supervision of its board and its official bodies, and also he has such interest as a citizen and taxpayer, in seeing that funds, in which the public have an interest, should not be diverted to an illegal purpose, or squandered for unauthorized purposes, and more especially he has an interest in requiring that funds raised for the support of this *quasi*-public body, they being trustees of the class of which he is a member, should not be unlawfully expended by the board, but should be held by it to subserve the special objects for which it was created. But, however this may be, and it is not necessary that we should definitely decide it, this Court has allowed the amendments requested, which are in the interest of a hearing of the case upon its real merits, and in accordance with, at least, one of our former decisions, when a similar amendment was ordered here. *Forte v. Boone,* 114 N. C., 176 (opinion by the present *Chief Justice*). There it was held, as the syllabus of the case shows, that where an action was brought on the official bond of a clerk of the Superior Court in the name of the parties injured by a breach thereof, it was not error in the court below to permit an amendment of the summons by the insertion of the words "The State on relation of" after the pleadings were filed. The Court, in the opinion says with respect to this holding: "We may note, however, that the exception to the judge's allowing the summons to be amended by adding the words 'State on relation of' before the name of plaintiff, was not error. *Maggett v. Roberts,* 108 N. C., 174. It might have even been allowed after verdict (*Brown v. Mitchell,* 102 N. C., 347), or, indeed, *in this Court,"* citing *Hodge v. Railroad,* 108 N. C., 24, 26; *Grant v. Rogers,* 94 N. C., 755; *Justices v. Simmons,* 48 N. C., 187; The Code, 965.

We then have a case, in the name of the State upon the relation of its Attorney-General and D. H. McCullough against the defendants, to enjoin the violation by the latter of the law creating them, wherein it is alleged that they have committed an *ultra vires* act, and to the extent that, if they may pay their expenses in the doing of the alleged unlawful act, they will misapply the trust fund established by the statute for the lawful costs and expenses of the board, and thereby are diminishing the amount which should go into the public treasury by the terms of the law, which provides in C. S. 7019, that after paying expenses, "Any surplus arising shall, at the end of each year, be deposited by the treasurer of the board with the State Treasurer to the credit of the general fund." C. S., 1143, entitled "Actions by the Attorney-General to prevent *ultra vires* acts by corporations," provides:

In the following cases the Attorney-General may, in the name of the State, upon his own information, or upon the complaint of a private party, bring an action against the offending parties for the purpose of—

1. Restraining by injunction a corporation from assuming or exercising any franchise or transacting any business not allowed by its charter.

2. Restraining any person from exercising corporate franchises not granted.

3. Bringing directors, managers, and officers of a corporation, or the trustees of funds given for a public or charitable purpose, to an account for the management and disposition of the property confided to their care.

4. Removing such officers or trustees upon proof of gross misconduct.

5. Securing, for the benefit of all interested, the said property or funds.

6. Setting aside and restraining improper alienations of the said property or funds.

7. Generally compelling the faithful performance of duty and preventing all fraudulent practices, embezzlement, and waste.

To restrain corporations from ultra vires acts, and which was applicable where purpose was not to dissolve a corporation, as under section 1187, but to preserve it in its useful functions without abuse of its powers. *Attorney-General v. R. R.*, 28 N. C., 456. This section embodies provisions of Rev. Code, ch. 26, sec. 28; Rev. Statutes, ch. 26, sec. 10; acts of 1831, ch. 24, sec. 5, which authorized injunction proceedings in a court of equity.

The authority, given by statute, as approved by this Court, would seem to be ample justification for granting the relief prayed for by plaintiff in this action. The Attorney-General is doing only what the statute permits him to do in the interest of the public, of his own motion, or upon the complaint of a private party.

Having disposed of this preliminary question, we proceed to consider the case upon its merits. It must be steadily kept in mind that we are now dealing with an overruled demurrer, and we can consider only the facts alleged in the complaint (which are to be taken as admitted), and no extraneous matter. *Hartsfield v. Bryan,* 177 N. C., 166; *Brewer v. Wynne,* 154 N. C., 467; *Wood v. Kincaid,* 144 N. C., 393.

We are firmly convinced that the statute, under which the defendants professed to hold this examination, does not authorize them to perform their duties, and exercise their functions, outside the State, and that, on the contrary, it requires them to confine their activities strictly within its limits. We do not suppose, for an instant, it will be controverted, that defendants are public officers. The board created by the act is, at least, a *quasi*-public corporation, required to discharge certain public duties, and responsibilities to the State and bound for their proper, and legal, performance, and also for the care, and administration of the funds they handle, the surplus of which, not used for defraying the board's expenses, being required to be deposited in the State Treasury. In *Groves v. Barden,* 169 N. C., 8, our Court defines the word "officers," and refers with approval to the case of *Attorney-General v. Tillinghast,* 17 A. & E. Anno. Cases, 452. These cases, with the authorities therein collected, and the later authorities given in the notes to *Groves v. Barden* in Anno. Cas., 1917-D, p. 316, furnish us the indicia by which we determine whether a given position is or is not an "office." Applying to the State Board of Accountancy the tests laid down in the cases, we find that the board was directly created by the Legislature; the qualifications of its members are prescribed by law—all to be residents of the State, three to be actively engaged as certified public accountants of this State, one to be a lawyer of the State in good standing; the treasurer is required to give bond; the funds belong to the State after the expenses of the officer are paid; there is entrusted to this board some of the sovereign authority of the State, it being an arm of the State Government; the duties are not merely clerical, or those of agents or servants, but are performed in the execution and administration of the law, in the exercise of power and authority bestowed by the law; they are appointed by the Governor; the people of the State at large are concerned in the performance of their official acts; their compensation is derived from fees fixed by law; they are not under contract with the State, either as to their duties or their compensation; the law fixes the duration of their term of office; such discretionary power is granted and such judgment required in the exercise of the functions for which the board was created as to render the official acts of its members *quasi*-judicial; the duties are continuing in their nature—*i. e.,* they are to be regularly performed; and the duties pertaining to the office cannot be delegated to others. The certificates granted by the

board constitute a license to practice as certified public accountants within the State. The position held by each of the defendants complies with all the tests prescribed in *State ex rel. Attorney-General v. Noland Knight,* 169 N. C., 333.

In 22 R. C. L., 396, boards of education, boards of legal examiners, and boards of equalization of taxes, are mentioned as among various well known instances of boards of public officers. It is admitted that the jurisdiction of the board is statewide, and if the members are officers, they are, therefore, State officers. The plaintiff contends, and it is true, that the jurisdiction of State officers is only coextensive with the territory of the State from which they derive their powers. "It is apparent that in strictness a mere license or power conferred by statute is only coextensive with the sovereignty from which the license or power emanates." 17 R. C. L., 502. "State officers are those whose duties concern the State at large, or the general public, although exercised within defined limits, and to whom are delegated the exercise of a portion of the sovereign power of the State. They are in a general sense those whose powers and duties are coextensive with the State." 36 Cyc., 852. In *S. v. Hocker,* 63 Am. Rep., 174, after reciting very fully the attributes necessary to constitute an officer, it was held that without any semblance of doubt the members of the board of legal examiners were State officers, the field for the exercise of whose jurisdiction, duties and powers, was coextensive only with the limits of the State.

It cannot be said that "coextensive with State boundaries" means more than the words imply, that is so contradictory that the mere statement of it is seemingly absurd. The word "jurisdiction" embraces not only the subject matter coming within the powers of officials, but also the territory within which the powers are to be exercised. *S. v. Magney,* (Neb.), 72 N. W., 1006, 1008). The question as to jurisdiction must be considered with reference to the territory within which it is to be exercised. (*Konold v. Rio Grande W. Ry. Co.,* (Utah), 51 Pac. 256.) Jurisdiction is defined to be the "power to hear and determine causes." The hearing is as important a part of jurisdiction as the determining. The power of officials to act as fixed and limited by the place of performance, is discussed in the case of *S. v. Dolan,* 72 Miss., 960, 18 So., 387, and particularly in the notes to the same case in 33 L. R. A., 85. While it is true that in most of the cases referred to in these notes some place for performance was designated in the statute, still in the case of *Ex parte Branch,* 63 Ala., 383, cited in this connection, it is said: "If the law should not, however, appoint a place for the sitting of the Court, it would doubtless rest in the power of the judge to appoint the time and place of the sitting; and the only limitation of the power would be, that the place should be within the territory of his jurisdiction." In *Ferebee*

*v. Hinton,* 102 N. C., 99, the clerk of the court of Camden County, North Carolina, went to Virginia, and took the examination and acknowledgment of the parties to a deed of trust on land in North Carolina, but did not write out his certificate and sign it until he returned to Camden County, North Carolina. The Court said: "That the deed was void as to the wife, if the clerk of the Superior Court of Camden County took her privy examination in the State of Virginia cannot be denied, and it is unnecessary to cite authority in support of such a plain proposition as to the admissibility of the evidence; as to the other point, it is equally clear that the clerk had no jurisdiction when he took the privy examination in the State of Virginia." This case is cited with approval in *Long v. Crews,* 113 N. C., 256, in which the present *Chief Justice* wrote the opinion, and in which he says: "In this State it is settled law that an acknowledgment of a deed by the husband and privy examination of the wife taken before a justice of the peace, commissioner, or notary, is a judicial, or, at least, a *quasi*-judicial act, and if such officer is not authorized to take it, the probate and registration are invalid against creditors and purchasers. . . . The principle has since been followed in *Todd v. Outlaw,* 79 N. C., 235; *Duke v. Markham,* 105 N. C., 131, and many other cases. . . . These were all cases where the registration and probate were insufficient because the acknowledgment was made before an officer, by reason of his locality, not authorized or acting outside of his local jurisdiction, and the ruling is sustained by ample authority elsewhere. 1 A. & E., 146, note 2, and 1 Devlin on Deeds, sections 487 and 488, with cases cited. . . . The acknowledgment is taken, so to speak, *coram non judice,* and cannot authorize probate by the clerk and registration," citing authorities. Acts of a school officer must generally be performed at the times and places designated by law, or they will be invalid; and, generally speaking, they must be performed within the territory over which the officer's jurisdiction extends. 24 R. C. L., 578.

In *Pardrige v. Morgenthau,* 157 Ill., 395, the judge out of Court and off the bench approved an appeal bond, and directed it to be filed *nunc pro tunc,* and it was decided to be invalid. In *Bear v. Cohen,* 65 N. C., 511, it was held that a judge appointed by the Governor to hold court in Wilson and Craven counties, did not have jurisdiction to act in cases pending in other counties of the district—specifically, to set aside an attachment in Wayne County. In *S. v. Jefferson,* 66 N. C., 309, the judge left the court in Warren County before the jury agreed on a verdict, and went to his home in the adjoining county of Franklin, where he was advised by telegraph that the jury could not agree. He instructed the clerk by wire to discharge the jury and remand the prisoner. Discussing error in the exercise of power by the court, (the validity of his act as affected by the place of its performance), it was held to be the duty of the judge

that he should be personally present in court, and therefore his act was illegal, and the prisoner was entitled to his discharge. When in 1913 our Legislature enacted a curative statute validating probates and acknowledgments taken prior to 1913 by officers out of the county, or district, authorized by law, only such probates or acknowledgments were validated as had been taken within the State. Laws 1913, ch. 125, C. S. 3336. *In re Allison,* 13 Colo., 525, 10 L. R. A., 790, it was said that "no issue was made with the definition usually given that a court consists of persons officially assembled, under authority of law, at the appropriate time and place for the administration of justice, nor was it denied that the place of meeting was an important element in the definition."

It is elementary that when the law confers upon a person powers that he as a natural person does not possess, power cannot accompany his person beyond the bounds of the sovereignty which has conferred the power. For example, letters testamentary or of administration have no legal effect beyond the territorial limits of the State in which they are granted. An executor or administrator cannot sue in his official capacity in the courts of any other state than that from which he derives his authority to act in virtue of the letters there granted to him, because his appointment stops at the boundary of the state which appointed him. 11 R. C. L., pp. 432-447. He must resort to ancillary administration in the other state. A state may have extra territorial officers, such as commissioners to take acknowledgments of deeds in other states and territories, but such cases are clearly exceptional. 22 R. C. L., 405. The same familiar principle that forbids court officials, executors, administrators, and guardians from acting in their official capacity beyond the state boundaries, is applied in the case of corporations. In the case of *Miller v. Ewen,* 27 Maine, 509, 46 Am. Dec., 619, it was held that a general clause in a charter authorizing certain persons to call the first meeting of a corporation at such time and place as they think proper, does not authorize them to call the meeting at a place without the state. Numerous cases may be cited to establish the general principle that meetings of corporations for the performance of corporate acts must be held within the state creating the corporation. 14 Cor. Jur., 886 and 7 R. C. L., 335. Our own State has enacted this principle into the statute, *i. e.,* that meetings of stockholders must be held within the State. The reason given for this rule is that in the performance of corporate acts, the corporation shall be at all times under the supervision and control of the laws of a state creating the corporation. If this be true of private corporations, *a fortiori* is it true of an arm of the State Government, a body corporate to whom has been entrusted the performance of a governmental duty designated to protect the people of the State against unskilled and

incompetent persons in a profession for which the State has seen fit to fix standards of proficiency before admission to practice.

As has been said, "jurisdiction" involves the hearing as well as the determining of matters to be decided—indeed, the hearing of the matter is the basis for the determination. The giving of examinations for determining the qualifications of applicants is not a mere incidental or ministerial duty such as might be delegated by the State Board of Accountancy to other persons, but is a judicial or *quasi*-judicial duty required to be performed by the members of the board themselves, and in order further to safeguard the public, certain standards of skill are required of the examiners. The plaintiff contends that the submission and the supervision of the holding of the examination, and the determination of the qualifications of applicants, constitute one official act, requiring such judgment and discretion as to render it judicial or *quasi*-judicial in character; that it is the performing of a function of government designed to benefit the people of the State; and therefore, in going beyond the boundaries of the State to perform this function, the board would exceed its jurisdiction. It seems superfluous to cite other authorities than those already cited from our own Court in *Ferebee v. Hinton,* 102 N. C., 99, and in *Long v. Crews,* 113 N. C., 256, either as to the judicial character of the official acts of the Board of Accountancy, or as to the place where these acts may be performed. The comparatively simple act of taking the acknowledgments and examination of the grantors in a deed, by a notary, commissioner, justice of the peace, or clerk, has been repeatedly held by this Court, to be judicial, not only in the cases cited above, but in *S. v. Knight,* 169 N. C., 333; *Paul v. Carpenter,* 70 N. C., 508; *White v. Connelly,* 105 N. C., 68; *Piland v. Taylor,* 113 N. C., 1, and others.

Bishop or Non-Contract Laws, secs. 785, 786, says that *quasi*-judicial functions are those which lie midway between the judicial and the ministerial ones. The lines, separating them from such as are on their two sides, are necessarily indistinct; but in general terms, when the law, in words or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is term *quasi*-judicial. In 18 R. C. L. 294, in discussing the extent to which a board of examiners may be controlled in granting professional licenses, the discretionary power to pass on qualifications is termed "judicial," and in every case where the acts complained of constituted an abuse of discretion or an excess of jurisdiction, it is held that the courts should intervene to enforce or enjoin, as the circumstances might be. In 22 R. C. L., 383, it is said that certain officers are considered *quasi*-judicial, as for example, members of a board of pilot commissioners, to whom the law has entrusted certain duties, the performance of which requires the ex-

ercise of judgment. In *Boner v. Adams, Auditor, and Jenkins, Treasurer,* 65 N. C., 639, it was held that the State Auditor is not a mere ministerial officer, but exercises discretionary powers. It was held in *Ex parte Garland,* 4 Wall. (U. S.) 333, at 378, that the admission and exclusion of attorneys is the exercise of judicial power, and has been so held in numerous cases at that time. This has been approved in numerous later decisions referred to in Rose's Notes, Vol. 6, p. 55. In Troop on Public Officers, pp. 507 *et seq.,* it is said that although an officer may not in the strictness be a judge, still, if his powers are discretionary, to be exerted or withheld according to his own view of what is necessary and proper, they are in their nature judicial. Where a power rests in judgment or discretion, so that it is of a judicial nature or character, but does not involve the exercise of the functions of a judge, or is conferred upon an officer other than a judicial officer, the expression used is generally *"quasi-*judicial." It is a general and sound principle that whenever the law vests any person with a power to do an act, and constitutes him a judge of the evidence on which the act may be done; and, at the same time, contemplates that the act is to be carried into effect through the instrumentality of agents; the person thus clothed with power is invested with discretion, and is *quoad hoc* a judge. By judicial action is meant, in legal understanding, that which requires the exercise of judgment or discretion by one or more persons, or by a corporate body, when acting as public officers, in an official character, as shall seem to them to be equitable and just.

In *S. v. State Medical Examining Board,* 50 Am. Rep. (32 Minn.) 575; in *People v. Dental Examiners,* 110, Ill., 180; in *S. v. Gregory,* 83 Mo., 123, 53 Am. Rep. 565; in *Williams v. Dental Examiners* (Tenn.), 27 S. W., 1019; and many similar cases, it was held that examining boards for physicians, dentists, lawyers, and other professions, exercise judicial or *quasi-*judicial powers; and in all other cases, the courts addressed themselves largely to determining whether the act complained of was within, or in excess, or abuse, of such powers; if the latter, it could be enjoined or enforced by the courts. In the much-cited case of *S. v. Chittendon* (Wis.), 107 N. W., 500, at 516, it is said that the law leaves the matter (decision as to status of the college) to the board, acting reasonably, the same as similar matters are commonly left to such agencies exercising *quasi-*judicial authority. It contemplates that the members of the board will proceed with the dignity and fairness commonly expected of tribunals exercising judicial or *quasi-*judicial authority; that they will act as a body; that they will act upon proof of some sort reasonably appropriate to the case and made a matter of record, not necessarily that they will, in all cases, act regardless of personal investigation, but that in case of reliance thereon the result of the investigation will be

made a matter of record.  .  .  .  In short, that they will exercise their judicial function judicially, and that their decisions will be open to review by the courts for jurisdictional error.

The general rule for the construction of statutes, when applied to the law under consideration, clearly indicate that the intention of the Legislature, and the object to be secured by the performance of the duties presented for the board of accountancy, require that the words "at such places as it may designate," shall be construed to mean "at such places within the State as it may designate." In construing a statute, it is to be considered in its relation to other laws, as part of a general and uniform system of jurisprudence, in connection with other statutes on the same or cognate subjects, or even on different subjects. Where the language is of doubtful meaning, or adherence to the strict letter would lead to injustice, the Court gives a reasonable construction consistent with the general principles of law. The spirit, or reason of the law, prevails over its letter. The meaning of general terms may be restrained by the evident object, or purpose to be attained, and general language may be construed to admit implied exceptions, in order to accomplish what was manifestly intended. It is proper to consider the occasion and the necessity for its enactment, and that construction should be given which is best calculated to advance the object by suppressing the mischief and securing the benefits contemplated. If the purpose, and well ascertained object of a statute, are inconsistent with the exact words, the latter must yield to the controlling influence of the legislative will resulting from a consideration of the whole act. A statute should not be extended beyond the fair and reasonable meaning of its terms because the Legislature did not use proper words to express its meaning. Where the ordinary interpretation of a statute leads to consequences so dangerous and absurd that they could never have been intended, the Court may adopt a construction from analogous provisions and thus supply an omission. *Abernethy v. Comrs.,* 169 N. C., 631.

The above is a summary of some of the general principles for the construction of statutes as laid down in 36 Cyc., 1102 *et seq.,* and many decisions and when applied to the statute under consideration in the case at bar, the conclusion is inevitable that the field for the discharge of the functions of the State Board of Accountancy is not the whole world, but only "such places within the State as the board may designate." In *S. v. Ind. Co.,* (Ark.), L. R. A., 348, in construing a statute in which the word "any" occurred thirteen times in the first section, the Court held that although the Legislature may use generally words, such as "any" or "all," in describing the persons or acts to which the statute applies, still it does not follow that the law has any extra territorial effect; for it is presumed that the Legislature did not presume it to have such

an extensive, or world-wide effect, unless the language of the statute admits of no other reasonable interpretation. *Bond v. Jay,* 7 Cranch, 351. The reports furnish numerous instances of the application of this rule, by which general words used in statutes are taken as limited to cases within the jurisdiction of the Legislature passing the statute, and confining its operation to matters affecting persons and property in such jurisdiction. If it were necessary, hundreds of cases and statutes could be referred to containing general words, which are thus limited. Among the vast number of cases construing such statutes, it is doubtful if one can be found in which such general words have not been treated as limited to some extent, for it is unusual for a legislature to intend that its statutes shall apply everywhere.

We have already referred to the law of corporations as being a law on a cognate subject. Even more closely allied is our law as it relates to such professions as law, medicine, etc. Until 1917, our statute did not prescribe where the examinations for entrance to the bar were to be held, and even now the statute (C. S., 195) says that examinations for license to practice law may be held in the city of Raleigh. Before 1917 the examiners of applicants for admission to the bar did not construe their authority to permit the holding of examinations outside the State nor, since 1917, at any place other than the city of Raleigh, even though the word "may" sometimes implies discretion. C. S., 6609, prescribes that the board of medical examiners shall meet in the city of Raleigh. C. S., 6701, prescribes that the board of osteopathic examiners shall meet in Raleigh in July of each year, "and at such other times and places as a majority of the board may designate." In our statutes, some discretion is permitted the various other boards of examiners for dentists, pharmacists, nurses, teachers, etc. In these cases, however, we are not left to apply only the general rules for the construction of statutes. The law is unmistakably clear that the Legislature has no power to enact statutes, even though in general words, that can extend in their operation and effect beyond the territory of the sovereignty from which the statute emanates. The legislative authority of every state must spend its force within the territorial limits of the State. Cooley's Const. Lim., p. 154. As a general rule, no law has any effect of its own force beyond the territorial limits of the sovereignty from which its authority is derived. 25 R. C. L., 781; *Hilton v. Guyot,* 159 N. S., 113; 40 L. Ed., 95. Black on Interpretation of Laws, p. 91, says: *"Prima facie,* every statute is confined in its operation to the persons, property, rights, or contracts, which are within the territorial jurisdiction of the legislature which enacted it. The presumption is always against any intention to attempt giving to the act an extraterritorial operation and effect." Endlich on Interpretation of Statutes, p. 233, announces the same principle. No

presumption arises, from a failure of the state through its legislative authority to speak on the subject, that the state intends to grant any right, privilege, or authority under its laws to be exercised beyond its jurisdiction. *Walbridge v. Robinson,* 22 Idaho, 236; 43 L. R. A., N. S., 240. Either the statute applies to "such places within the State as the board may designate," or its scope is unlimited, and, for the convenience of applicants, the board may hold examinations anywhere and everywhere it sees fit. And if this board may go outside the state to hold examinations, why not every other examining board of the State do likewise, if the place is left to its discretion? Obviously, this would be subversive of public policy, of the spirit and intent of the law, would defeat the very ends which these protective statutes were enacted to accomplish, and might, in effect, make the creature greater than the creator.

We must not be understood as holding that the Legislature may not require certain official acts to be done beyond the State's limits, for it can legally do so, as for example in requiring depositions of witnesses or the acknowledgment of a deed or other instrument, to be taken in some other state, or even in a foreign country, and perhaps there are other illustrations of this legislative power. But they are done by its express permission, and are not merely implied.

The demurrer of the defendants admits as true the allegations of the complaint that the defendants intended: 1. To hold the examination outside the State. 2. To use in that examination the same questions that had been used in the preceding week in an examination in Raleigh; and, 3. That these duplicate questions were available to candidates for certificates in the Washington examination.

The defendants say that it was at the solicitation of applicants and for their convenience (not for the public welfare or interest) that they proposed to give the duplicate examination in Washington the week following the Raleigh examination. As a matter of fact, the defendants do not deny that some applicants were going to Washington from North Carolina to take the duplicate examination. This Court may judge for itself of the relative "convenience" of Washington and Raleigh for applicants already in this State, and of the interest of the citizens of this State to be served by holding a duplicate examination outside the State the week after such examination was held in Raleigh. The plaintiff seems to be in entire accord with the statement of the defendants in their demurrer that the act creating the State Board of Accountancy and prescribing its duties and powers, was passed in the interest of the general public, to protect them against incompetent, inefficient, or dishonest persons, and not for the purpose of granting special privileges or emoluments to any class of persons. The plaintiff contends, however, that in attempting to hold an examination in the city of Washington, "at

the earnest solicitation of numbers of applicants living in that section,"
and, as stated by defendants on the hearing, "for the convenience of ap-
plicants," the board was attempting to "grant special privileges" to those
applicants, and an even greater "special privilege" was the intended
use of duplicate questions which were available to applicants.   This
Court with these admitted facts before it, can judge whether an official
act thus performed is "for the public interest" or for the promotion of
the personal interest of applicants.   It is an unprecedented thing for the
other examining boards of the State to go beyond the borders of the
State to give examinations (much less duplicate examinations) to appli-
cants who may not find it convenient to come to the State to take the
same.   Yet the defendants claim that they are justified in going hun-
dreds of miles beyond the State boundaries, the week following an exam-
ination in Raleigh, to give a duplicate of that examination, because it
is more convenient to certain applicants to take the examination in
Washington; and some of the applicants going from this State to Wash-
ington for that purpose.   As well suggested by the plaintiff's learned
counsel, it is peculiar to certified accountants in Washington that the
mountain should come to Mahomet.   It is an established rule that when
the means for the exercise of a granted power are given, no other or dif-
ferent means can be implied, as being more effective or convenient.
Cooley's Const. Lim. (4th ed.) p. 78.   In stating in the call that this was
"positively the last examination to be held outside the State," the Board
of Accountancy impliedly admits that it considered such procedure ir-
regular, to say the least.

The authorities cited above, defining judicial and *quasi*-judicial offi-
cers, also establish the principle that when such officers exceed their
jurisdiction or abuse their discretion, it is subject to review by the
courts; in fact, so fundamental is this principle that in most of the
cases the courts do not discuss it, but address themselves to determining
whether or not the act complained of was in excess of jurisdiction or in
abuse of discretion, and if they decide these questions in the affirmative,
then it is held as a matter of course that the act should be enforced or
enjoined, as the case may be.   In Throop on Public Officers, pp. 525, *et
seq.,* it is said that where, in the exercise of a power, an officer is vested
with a discretion, his act is regarded as *quasi*-judicial.   .   .   .   But, of
course, if the officer or board attempts to exercise a power, either judicial
or ministerial, in a case to which his or its jurisdiction does not extend,
the act is either absolutely void or voidable by judicial proceedings, as
the case may be.   But the exercise of discretionary power is always sub-
ject, in some respects, to review by the courts.   So it may be reviewed,
where it has violated some rule of public policy, and of course it will be
violated by any illegality or excess of jurisdiction.   This principle has

been enacted into our State laws for municipalities (C. S., 2962), giving to any taxable inhabitant the right to maintain an action to set aside or prevent any illegal official act on the part of the municipality or its officers, and it is also well settled by numerous decisions of this Court, and has received the sanction of the Supreme Court of the United States in *Crampton v. Zabriskie,* 101 U. S., 601, 609, quoted in Dillon Mun. Corp., sec. 1581, and cited with approval in *Stratford v. Greensboro,* 124 N. C., 127. In referring to statutes similar to our own as found in C. S., 2962, Dillon Mun. Corp., sec. 1585, says: "The first class of wrongs provided for by the statute is simply defined as 'an illegal act,' and the statute contains no express provision that the illegal official act against which redress is sought be one which has ,resulted or will result in loss or injury to the municipality. So far as the literal language of the statute is concerned, any illegal official act may be prevented at the suit of a taxpayer having the requisite status as such. This liberal interpretation of the statute has been supported by the courts." In the notes to the above, it is said, citing authorities, that "an illegal official act which may be the subject of the taxpayer's action may be any act of a municipal officer which is not authorized by law or which is in excess of the authority conferred by law." In actions brought by taxpayers the court has taken jurisdiction and has restrained or annulled official acts of great diversity of character.

The State in the lawful exercise of its police power has created the State Board of Accountancy and required examinations of applicants to safeguard the public against incompetent accountants. Every citizen of the State is in a certain sense injured when the duties of the board are performed in such a manner as to let down the bars and lower the standards of the profession. There is an especial injury to properly accredited members of the profession who have met the conditions imposed by law, in the manner prescribed by law. Poor Richard says, "He who hath a trade hath an estate." A man's profession is his capital. The State has set standards for entrance into this profession, and those who have entered in the manner prescribed by law are entitled to the protection of the State to the extent, at least, that they shall not be unjustly discriminated against by admission of others into the profession in any other way than that prescribed by law.

It is not necessary to go beyond the decisions of our own Court to establish the contention that this is a subject for the cognizance and intervention of our courts. In *Glenn v. Comrs.,* 139 N. C., 421, our Court said: "If an *ultra vires* act were being threatened, the courts would enjoin it." In all the following cases it is said that when a discretionary power is exercised wrongfully, or transcends the authority of the officers, or is *ultra vires,* or when there is a manifest abuse of discretion, the

courts will enforce or enjoin the act, as the case may be, at the suit of a citizen, or taxpayer, and whenever the Court has declined to intervene, it has been on the ground that the act complained of was *infra vires.* *Brodnax v. Groom,* 64 N. C., 244; *Vaughan v. Comrs.,* 118 N. C., 636; *Stratford v. Greensboro,* 124 N. C., 127; *Edgerton v. Water Co.,* 126 N. C., 92; *Ewbanks v. Turner,* 134 N. C., 77; *Barnes v. Comrs.,* 135 N. C., 27; *Graves v. Comrs.,* 135 N. C., 49; *Merrimon v. Paving Co.,* 142 N. C., 539; *Newton v. School Committee,* 158 N. C., 186; *Comrs. v. Comrs.,* 165 N. C., 632; *Supervisors v. Comrs.,* 169 N. C., 548; *Cobb v. R. R.,* 172 N. C., 58.

The decisions of the courts of other states and the principle announced by the various text-books, are well summarized in *Perkins v. Indi. School Dist.,* 56 Ia., 476, 9 N. W., 356, where it was held that the courts of the State are arbitors of all questions involving the construction of the statutes conferring authority upon officers and jurisdiction upon special tribunals. It was certainly never the intention of the Legislature to confer upon school boards, superintendents of schools, or other officers discharging *quasi*-judicial function, exclusive authority to decide questions pertaining to their jurisdiction and the extent of their power. All such questions may be determined by the courts of the state. Hence, when the rights of a citizen are involved, in the exercise of authority by a school officer, the courts may determine whether such authority was lawfully exercised.

As to the demurrer, we have covered the entire field of inquiry, as the facts stated in the complaint are to be taken as admitted. On the motion for a continuance of the injunction to the hearing, there is an affidavit of Mr. G. G. Scott denying that the same questions as propounded in the State were used in the Washington examination, thereby giving the applicants there a decided advantage over those examined here. But we need not settle the controversy of fact, because it has been the rule for time out of mind that where there is conflict in the evidence the injunction is generally continued to the hearing. We stated the prevailing rule in *Cobb v. Clegg,* 137 N. C., 153, at p. 159, where it was said that it is generally proper, when the parties are at issue concerning the legal or equitable right, to grant an interlocutory injunction to preserve the right *in statu quo* until the determination of the controversy, and especially is this the rule when the principal relief sought is in itself an injunction, because a dissolution of a pending interlocutory injunction, or the refusal of one, upon application therefor in the first instance, will virtually decide the case upon its merits and deprive the plaintiff of all remedy or relief, even though he should be afterwards able to show ever so good a case. The principles we have attempted to state, are, we think, well supported by the authorities upon this subject, citing 1 High on

Injunctions (3 ed.), sec. 6; Bisphams Eq. (6 ed.), sec. 405; *Marshall v. Comrs.,* 89 N. C., 103; *Capehart v. Mahoon,* 45 N. C., 30; *Jarman v. Saunders,* 64 N. C., 367; *Lowe v. Comrs.,* 70 N. C., 532; and other authorities. In the *Marshall case, supra,* the Court said: "The injunctive relief sought in this action is not merely auxiliary to the principal relief demanded, but it is the relief, and a perpetual injunction is demanded. To dissolve the injunction, therefore, would be practically to deny the relief sought and terminate the action. This the Court will never do where it may be that possibly the plaintiff is entitled to the relief demanded. In such cases it will not determine the matter upon a preliminary hearing upon the pleading and *ex parte* affidavits; but it will preserve the matter intact until the action can be regularly heard upon its merits. Any other course would defeat the end to be attained by the action." The case last cited is directly in point here. But without the aid of this principle and the authorities sustaining it, we hold that the injunction should have been continued to the final hearing. It is argued that this case is like that where the tree was cut down, after the restraining order against felling it had been vacated. *Harrison v. Bryan,* 148 N. C., 315, and these additional cases are cited, supposedly to the same effect. *Pickler v. Board of Education,* 149 N. C., 221; *Wallace v. North Wilkesboro,* 151 N. C., 614; *Moore v. Monument Co.,* 166 N. C., 211. But they do not apply to this case, as the facts are not the same. In *Harrison v. Bryan, supra,* the tree had fallen under the stroke of the axe, never to rise again. It could not grow again after it had been destroyed. It had died and was therefore beyond restoration. This was a fact established, and not even a mandatory injunction could change it. But here, the act of the defendants may be repeated, it, at least, is possible for them to do so, and plaintiffs are not bound by their declared intention not to repeat their mistake. The law will strip them of the power to do so by its restraining process.

The entire judgment below will be reversed, injunction to the final hearing issued, the demurrer overruled, and the defendants permitted to answer over, if they so desire.

Reversed.